# 24-1086 (L)

24-1093(Con)
24-1150(Con)

# United States Court of Appeals
# for the First Circuit

JODI BOURGEOIS,
individually and on behalf of all others similarly situated,

*Plaintiff-Appellant,*

v.

THE TJX COMPANIES, INC.,

*Defendant-Appellee.*

*(See Inside Cover for Continuation of Caption)*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT,
DISTRICT OF NEW HAMPSHIRE

## BRIEF FOR PLAINTIFFS-APPELLANTS

Philip L. Fraietta
Matthew A. Girardi
Bursor & Fisher, P.A.
1330 Avenue of the Americas, Floor 32
New York, NY 10019
Tel: 202-837-7150
pfraietta@bursor.com
mgirardi@bursor.com

Benjamin Thomas King
Douglas Leonard & Garvey PC
14 South St, Ste 5
Concord, NH 03301
Tel: 603-224-1988
benjamin@nhlawoffice.com

*Attorneys for Plaintiffs-Appellants*

1987



ELECTRONIC
PARALEGAL

---

JODI BOURGEOIS,

*Plaintiff-Appellant,*

v.

THE GAP, INC.; OLD NAVY LLC.;
BANANA REPUBLIC, LLC and ATHLETA, LLC,

*Defendants-Appellees.*

---

PAMELA SMITH,
individually and on behalf of all others similarly situated,

*Plaintiff-Appellant,*

v.

HOME DEPOT U.S.A., INC.,

*Defendant-Appellee.*

---

# CORPORATE DISCLOSURE STATEMENT

Plaintiffs-Appellants have no corporate interests or affiliations to disclose.


Dated:  April 24, 2024        Respectfully submitted,

                                        */s/ Philip L. Fraietta*
                                         Philip L. Fraietta

# TABLE OF CONTENTS

**PAGE(S)**

JURISDICTIONAL STATEMENT ........................................................................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ...........................2

STATEMENT OF THE CASE.............................................................................3

   A. Statement of Facts.....................................................................................3

   B. Procedural History ....................................................................................7

SUMMARY OF THE ARGUMENT ...................................................................10

ARGUMENT

  I.   STANDARD OF REVIEW...................................................................14

 II.   THE LOWER COURT ERRED BY FINDING THAT
     DEFENDANTS-APPELLEES DID NOT VIOLATE N.H. RSA
     260:14 IX(B)........................................................................................14

    A. Driver's Licenses Are "Motor Vehicle Records"..........................15

    B. Defendants-Appellees "Offered" Plaintiffs-Appellants' License
      Information To TRE ........................................................................19

III.   THE LOWER COURT ERRED BY FINDING THAT
     DEFENDANTS-APPELLEES DID NOT VIOLATE N.H. RSA
     260:14 IX(A) ......................................................................................23

    A. Driver's Licenses Are "Department Records" Regardless Of Who
      Currently Possesses Them .............................................................24

    B. The Lower Court Improperly Conflated The Federal DPPA With
      The NH DPA ..................................................................................28

    C. The New Hampshire Code of Administrative Rules Supports
       Plaintiffs-Appellants' Reading ....................................................................31

IV.   PLAINTIFFS-APPELLANTS PROPERLY PLED CLAIMS
       UNDER N.H. RSA 260:14, IX (A) AND (B)...............................................34

V.   IN THE ALTERNATIVE, THE FACTORS FOR
      CERTIFICATION ARE MET HERE ..........................................................35

CONCLUSION...................................................................................................36

FED. R. APP. P. 32(a)(7)(B) CERTIFICATION ...................................................38

CERTIFICATE OF SERVICE .............................................................................38

# TABLE OF AUTHORITIES

**PAGE(S)**

*Andrews v. Sirius XM Radio Inc.*,
    932 F.3d 1253 (9th Cir. 2019) ................................................................. 29-30

*Appeal of Town of Seabrook*,
    163 N.H. 635 (2012) ........................................................................18

*Artuso v. Vertex Pharm., Inc.*,
    637 F.3d 1 (1st Cir. 2011) ................................................................14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ...........................14

*Cardigan Mountain Sch. v. N.H. Ins. Co.*,
    787 F.3d 82 (1st Cir. 2015) ..............................................................14

*Castagnaro v. Bank of New York Mellon*,
    772 F.3d 734 (1st Cir. 2014) .............................................................35

*DeVere v. Att'y Gen.*,
    146 N.H. 762 (2001) ............................................................12, 27, 30

*Doe v. Comm'r of New Hampshire Dep't of Health & Hum. Servs.*,
    174 N.H. 239 (2021) ........................................................................18

*Donovan v. Digital Equip. Corp.*,
    883 F. Supp. 775 (D.N.H. 1994) .......................................................30

*Evergreen Partnering Grp., Inc. v. Pactiv Corp.*,
    720 F.3d 33 (1st Cir. 2013) ..............................................................14

*Figueroa v. Taylor*,
    2006 WL 3022966 (S.D.N.Y. Oct. 23, 2006) .......................................30

*Genworth Life Ins. Co. v. New Hampshire Dep't of Ins.*,
    174 N.H. 78 (2021) .........................................................................18

*Home Gas Corp. v. Strafford Fuels, Inc.*,
    130 N.H. 74 (1987)..................................................................20

*In re Hundley*,
    603 F.3d 95 (1st Cir. 2010)......................................................35

*Jodi Bourgeois v. The Gap, Inc., et al.*,
    docket number 1:23-cv-00394-LM ........................................1, 9

*Jodi Bourgeois v. The TJX Companies, Inc.*,
    docket number 1:23-cv-00354-PB............................................1, 7

*Martin v. Applied Cellular Tech., Inc.*,
    284 F.3d 1 (1st Cir. 2002).........................................................14

*Moulton v. Brookline Rent Control Bd.*,
    385 Mass. 228, 431 N.E.2d 225 (1982).....................................21

*Mountain Valley Mall Assocs. v. Municipality of Conway*,
    745 A.2d 481 (N.H. 2000).........................................................21

*Pamela Smith v. Home Depot U.S.A., Inc.*,
    docket number 1:23-cv-00294-LM ..........................................1, 8

*People v. Williams*,
    16 Cal. 4th 153 (1997)..............................................................30

*Petition of State*,
    159 N.H. 456 (2009)............................................................17, 22

*Petition of Strandell*,
    132 N.H. 110 (1989).................................................................18

*Reno v. Condon*,
    528 U.S. 141 (2000)..................................................................29

*Russell v. Boston Wyman, Inc.*,
    410 Mass. 1005, 574 N.E.2d 379 (1991)...................................21

*Siegler v. Best Buy Co. of Minnesota,*
    519 F. App'x 604 (11th Cir. 2013)...............................................................28

*Smith v. Home Depot U.S.A., Inc.,*
    Civil No. 23-cv-294-LM, 2023 DNH 152 (2023) ...............................*Passim*

*TAG/ICIB Services, Inc. v. Pan American Grain Co.,*
    215 F.3d 172 (1st Cir.2000)..........................................................................14

*United States v. Ven–Fuel, Inc.,*
    758 F.2d 741 (1st Cir.1985)..........................................................................21

*Winnacunnet Coop. Sch. Dist. v. Town of Seabrook,*
    148 N.H. 519 (2002).....................................................................................17

**Rules, Laws & Statutes:**

15 U.S.C. § 1681 ...................................................................................32

18 U.S. Code § 2721 ................................................................11, 12, 28

28 U.S.C. § 1291 .......................................................................................2

28 U.S.C. § 1332 .......................................................................................1

Fed. R. Civ. P. 12 ....................................................................................14

N.H. Rev. Stat. Ann. § 260:14 .......................................................*Passim*

N.H. RSA 356:14 .....................................................................................30

**Other:**

Black's Law Dictionary (11th ed. 2019) ........................................*Passim*

Black's Law Dictionary (6th ed. 1990) ......................................11, 20, 25

Reading Law 161 .....................................................................................21

Sutherland Statutes and Statutory Construction § 47:16 (7th ed.) ..........23

# JURISDICTIONAL STATEMENT

This consolidated appeal concerns Appeal No. 24-1086 (captioned *Jodi Bourgeois v. The TJX Companies, Inc.* and originating in the District Court for the District of New Hampshire, under docket number 1:23-cv-00354-PB) ("TJ Maxx"); Appeal No. 24-1093 (captioned *Pamela Smith v. Home Depot U.S.A., Inc.* and originating in the District Court for the District of New Hampshire, under docket number 1:23-cv-00294-LM) ("Home Depot"); and Appeal No. 24-1150 (captioned *Jodi Bourgeois v. The Gap, Inc.*, *et al.* and originating in the District Court for the District of New Hampshire, under docket number 1:23-cv-00394-LM) ("The Gap et al.") (collectively, the "Matters"). The Matters were consolidated by this Court on March 28, 2024, and all concern whether Plaintiffs-Appellants stated a claim against Defendants-Appellees for alleged violation of N.H. RSA 260:14 (the "Driver Privacy Act" or "NH DPA").

The lower court had jurisdiction over the Matters pursuant to 28 U.S.C. § 1332(d) because, in each Matter, there are more than 100 putative class members, the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one putative class member is a citizen of a state different from at least one defendant.

Presently, in each of the Matters, the respective Plaintiff-Appellant appeals a final judgment granting the respective Defendant-Appellee's motion to dismiss. *See*

A-284 (TJ Maxx January 5, 2024 minute order granting motion to dismiss "for the reasons set forth in … *Smith v. Home Depot*"); A-682-83 (Home Depot December 19, 2023 order); and A-275-76 (The Gap et al. December 20, 2023 order granting motion to dismiss "for the same reasons … in *Home Depot*").

Plaintiff-Appellant Bourgeois filed a timely notice of appeal in TJ Maxx on January 18, 2024. Plaintiff-Appellant Smith filed a timely notice of appeal in Home Depot on January 18, 2024. Plaintiff-Appellant Bourgeois filed a timely notice of appeal in The Gap et al. on January 18, 2024. The Court therefore has jurisdiction over this consolidated appeal under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.  Is there any difference between "motor vehicle records" as defined at N.H. RSA 260:14, I(a) and referred to in N.H. RSA 260:14, IX(b), and "department records" as referred to in N.H. RSA 260:14, IX(a)?

2.  Is a driver's license a "motor vehicle record" under N.H. RSA 260:14, I(a)?

3.  Is a driver's license a "department record" as referred to under N.H. RSA 260:14, IX(a)?

4.  Does the Driver Privacy Act, N.H. RSA 260:14, regulate only the conduct of the Department of Safety and individuals or non-state entities that obtain information directly from the Department of Safety, or does its regulatory reach

extend to the conduct of individuals and non-state entities who have not obtained information directly from the Department?

## STATEMENT OF THE CASE

### A.    Statement of Facts

Appeals Nos. 24-1086, 24-1093, and 24-1150 arise from three separate cases, each heard in the District Court for the District of New Hampshire.  *See* A-278; A-606; A-688.   The claims of these cases are essentially identical.   Plaintiffs-Appellants allege that Defendants-Appellees The TJX Companies, Inc.; Home Depot U.S.A., Inc.; and The Gap, Inc., Old Navy, LLC, Banana Republic, LLC, and Athleta, LLC, respectively, violated their retail customers' privacy rights under N.H. RSA 260:14.  *See* A-18-20; A-297-99; A-622-24.

All cases concern how customers' driver's licenses, including the personal information contained in them, constitute "motor vehicle records" under N.H. RSA 260:14, I(a) and "department record[s]" under N.H. RSA 260:14, IX(a).  *See* A-27-29; A-305-07; A-631-33.  In each of the three cases, Plaintiffs-Appellants allege that Defendants-Appellees require their customers to release the "personal information" (photographs or computerized images, driver identification numbers, names, addresses, telephone numbers, and/or medical or disability information) contained in their respective driver's licenses.  N.H. RSA 260:14, I(c).  *See* A-27-29; A-305-

07; A-631-33. Specifically, Plaintiffs-Appellants were required to release their personal information when:

(a) seeking to complete the return of an item without showing a receipt; and

(b) seeking to utilize in-store credit (i.e., via stored value cards) conferred upon the completion of non-receipted returns.

*See* A-19; A-298; A-623.

Then, without Plaintiffs-Appellants' knowledge or consent, Defendants-Appellees "disclosed" (in violation of N.H. RSA 260:14, IX(a)) and "offered" (in violation of N.H. RSA 260:14, IX(b)) this personal information to an unauthorized third party, The Retail Equation ("TRE"). *See* A-32-38; A-310-16; A-636-42.

TRE is an entity owned by Appriss, Inc. that connects retail customers' transaction data with an ID number – such as the number contained on a government-issued ID. *See* A-19; A-298; A-623. Using this transaction data, TRE analyzes customers' history with a particular retailer to identify activity that appears to be fraudulent, abusive, or in violation of the retailer's policies. *See* A-19; A-298; A-623. Sometimes transactions (i.e., non-receipted returns and in-store credit transactions) are stopped, based on TRE's analysis. *See* A-19; A-298; A-623.

Plaintiffs-Appellants were injured as a direct and proximate result of Defendants-Appellees' conduct because:

(a)     had Plaintiffs-Appellants been conferred the opportunity to provide or withhold their consent to Defendants-Appellees' having disclosed and offered their driver's licenses and the personal information contained in them to TRE, they would have withheld their consent; and

(b)     Defendants-Appellees thus encroached upon Plaintiffs-Appellants' respective privacy rights to control the collection, use, and disclosure of their personal information.

*See* A-34; A-75; A-126.

It was this very sort of conduct that the NH DPA was designed to protect against. The NH DPA was enacted by the New Hampshire state legislature in 1996 and then subsequently amended in response to two primary interests – "public safety as well as privacy." *See* A-22-23; A-300-01; A-626-28. Regarding public safety, New Hampshire legislators were concerned about how, through a "license[,] all of a sudden, someone's whole life, as we know it, pops up in front of you. It is almost voyeuristic." *See* A-23; A-301; A-628. Along these lines, one member of the General Court aptly remarked, during the process of amending the NH DPA, "[i]f my wife goes to the local 7-11 … I don't think the guy behind the counter should have any ability whatsoever to see where she lives or any other information. It is none of his business. And, it is a stalking problem, in my opinion." *See* A-23; A-301; A-628. The NH DPA is meant to stymie such voyeurism and stalking.

Furhter, the NH DPA reflects the General Court of New Hampshire's understanding that driver's licenses are "property of the state" and "the information on your license[] … belongs to the State of New Hampshire[.]" *See* A-24; A-302; A-627. Thus, as per John Stephen, the then-Assistant Commissioner for the New Hampshire Department of Safety, the NH DPA is meant "not just to prevent stalking, but … to prevent the use of motor vehicle records for purposes other than motor vehicle related safety and law enforcement." *See* A-23; A-301; A-628. As stated by then-Representative Neal Kurk, one of the sponsors of the NH DPA, in New Hampshire, it is vital:

> [t]hat the information given to the Department of Safety for the purpose of getting a license or registration is to be used by the Department and by others for those purposes only. … It [i]s not to be used as a data bank for any other purpose; it [i]s to be used only to enforce motor vehicle laws.

*See* A-24; A-302; A-627.

Relevant to the instant cases, the NH DPA's drafters knew that when businesses, like Defendants-Appellees, use "licenses and they start keeping databases, it is pretty easy to trace where you have been, probably easy to trace who you were with. So, it is, in my opinion, big brother. The point is that we don't need it." Indeed, a New Hampshire-based news outlet relates:

> John Stephen, assistant commissioner of the N.H. Department of Safety, said, "The Legislature gave a clear intent when they passed the driver privacy act — to protect driver information. The bottom line is that the act of establishing a database using that information is, in our

minds, contrary to the intent of that law. This should not be done in New Hampshire. It's clear in our minds, people in this state are very committed to protecting the information the Department of Motor Vehicles retains on drivers." Stephen said the retail operations have not been authorized to use or to collect the information on drivers' licenses, and he wants the practice to stop. "No agency, outside of law enforcement, has been authorized by the Department of Motor Vehicles to collect this information, for any purpose," Stephen said.

*See* A-26; A-304; A-627.

Thus, the NH DPA serves to protect the ability of New Hampshire residents to move unobtrusively, without uninvited surveillance or scrutiny. However, Defendants-Appellees plainly violate the NH DPA.

### B. Procedural History

Plaintiff-Appellant Bourgeois filed *Jodi Bourgeois v. The TJX Companies, Inc.*, 1:23-cv-00354-PB, Appeal No. 24-1086 in the Rockingham County Superior Court on May 26, 2023. A-292. Defendant-Appellee The TJX Companies, Inc. subsequently removed the TJ Maxx matter to the District Court for the District of New Hampshire on July 14, 2023. A-285. On August 4, 2023, Defendant-Appellee The TJX Companies, Inc. filed its Motion to Dismiss the Complaint. A-280. On January 5, 2024, the lower court granted Defendant-Appellee The TJX Companies, Inc.'s Motion to Dismiss the Complaint, entering an order stating: "I grant defendant's motion to dismiss (document number 8) substantially for the reasons set forth in Judge McCafferty's order dismissing the materially identical complaint in Smith v. Home Depot U.S.A., Inc., Civil No. 23-cv-294-LM, 2023 DNH 152

(2023)." A-605. Plaintiff-Appellant Bourgeois timely filed her notice of appeal on January 18, 2024, and Appeal No. 24-1086 was opened on January 22, 2024. A-606.

Plaintiff-Appellant Smith filed *Pamela Smith v. Home Depot U.S.A., Inc.*, 1:23-cv-00294-LM, Appeal No. 24-1093 in the Hillsborough County Superior Court on April 10, 2023. A-620. Defendant-Appellee Home Depot U.S.A., Inc. subsequently removed the Home Depot matter to the District Court for the District of New Hampshire on May 25, 2023. A-613. On June 22, 2023, Defendant-Appellee Home Depot U.S.A., Inc. filed its Motion to Dismiss the Complaint. A-608. On October 25, 2023, the lower court held a hearing regarding the Motion to Dismiss. A-649. On December 19, 2023, the lower court granted Defendant-Appellee Home Depot U.S.A., Inc.'s Motion to Dismiss the Complaint. A-672. Therein, the lower court held that Smith failed to state a claim under 260:14, IX(a):

> Smith's first claim is brought pursuant to RSA 260:14, IX(a). That paragraph, in conjunction with paragraph X, provides a private right of action when a "person knowingly discloses information from a department record to a person known by such person to be an unauthorized person." Home Depot argues that Smith's driver's license is not a "department record" as that term is used in RSA 260:14, IX(a). The court agrees. … The information Home Depot disclosed was not within a document obtained from the department of safety.

The lower court also held that Smith failed to state a claim under 260:14, IX(b):

> Despite Smith's observation, however, the court is dubious of the proposition that a driver's license in the possession of the person to whom it pertains is a "motor vehicle record" within the meaning of the

Driver Privacy Act. ... While this in and of itself is fatal to Smith's claim under paragraph IX(b), her claim fails for the additional reason that she does not plausibly allege that Home Depot sold, rented, offered, or exposed for sale her driver's license. Construing the term "offers" by reference to the "more specialized character" of the words adjacent to it, the court concludes that RSA 260:14, IX(b) does not prohibit the mere disclosure or offer to disclose motor vehicle records.

Plaintiff-Appellant Smith timely filed her notice of appeal on January 18, 2024, and Appeal No. 24-1093 was opened on January 22, 2024. A-688.

Plaintiff-Appellant Bourgeois filed *Jodi Bourgeois v. The Gap, Inc., et al.*, 1:23-cv-00394-LM, Appeal No. 24-1150 in the Hillsborough County Superior Court on June 29, 2023. A-16. Defendants-Appellees The Gap, Inc., et al. subsequently removed the The Gap, Inc., et al. matter to the District Court for the District of New Hampshire on August 16, 2023. A-7. On September 6, 2023, Defendants-Appellees The Gap, Inc., et al. filed their Motion to Dismiss the Complaint. A-1. On December 20, 2023, the lower court granted Defendants-Appellees The Gap, Inc., et al.'s Motion to Dismiss the Complaint, entering an endorsed order stating: "The court grants defendants' motion to dismiss (doc. no. 18) for the same reasons it granted the motion to dismiss in <u>Home Depot</u>." A-275. Plaintiff-Appellant Bourgeois timely filed her notice of appeal on January 18, 2024, and Appeal No. 24-1150 was opened on February 9, 2024. A-278.

On March 15, 2024, Plaintiffs-Appellants filed a motion to consolidate Appeals Nos. 24-1086, 24-1093, and 24-1150. That motion was granted on March

28, 2024.

**SUMMARY OF THE ARGUMENT**

The lower court erred in granting Defendants-Appellees' motions to dismiss.

First, the lower court erred by finding that Plaintiffs-Appellants could not allege a violation RSA 260:14 IX(b) because a driver's license kept in their own "possession" is not a "motor vehicle record" under the NH DPA. The lower courts' interpretation directly contradicts the clear and unambiguous text of the statute, which defines "motor vehicle records" to include "licenses issued or revoked by the department relative to motor vehicles[.]" RSA 260:14, I(a). The inclusion of the words "issued" and "revoked" in RSA 260:14, I(a) makes clear that a driver's license can leave the exclusive possession of the Department of Safety ("Department"), while still being a "motor vehicle record" as defined by the statue.

Second, the lower court erred by finding that Plaintiffs-Appellants failed to allege a violation of RSA 260:14, IX(b) because there were no allegations that TRE received money for its services from Defendants-Appellees. But RSA 260:14, IX(b) states, in pertinent part: "A person is guilty of a class B felony if, in the course of business, such person knowingly sells, rents, offers, or exposes for sale motor vehicle records to another person in violation of this section." The plain meaning of "offer" (to present for acceptance or rejection) does not require monetary exchange. Further, the "last antecedent rule" combined with the Oxford comma placed after

10

the word "offer," shows that the modifying phrase "for sale" applies only to the term "exposes." And, in any event, the exposure of the driver's license information was not "simply an exchange irrespective of financial gain" because Defendants-Appellees pay money to TRE for their monitoring services. *See* A-19 n.1; A-298 n.1; A-623 n.1.

Third, the lower court erred by holding that "because [a] personal driver's license, which [Plaintiffs-Appellants] kept in [their] own possession, is not a 'department record,' [they] fail[] to state a claim for a violation of RSA 260:14, IX(a)." A-681; A-284; A-275-76. In actuality, a "department record" (i.e., New Hampshire Department of Safety record) could plausibly be associated with any of Department of Safety's seven "divisions" (including, *inter alia*, the New Hampshire Division of Motor Vehicles). A "motor vehicle record," on the other hand, is specifically associated with the New Hampshire Division of Motor Vehicles. Moreover, a driver's license is a "record" – a "tangible medium" that is "drawn up, under authority of law, by a proper officer and designed to remain as a memorial" of a driver's eligibility to operate a motor vehicle. *See Record*, *Black's Law Dictionary* (11th ed. 2019); *Record*, *Black's Law Dictionary* (6th ed. 1990).

Fourth, the lower court erred by conflating the NH DPA and the federal Drivers Privacy Protection Act (18 U.S. Code § 2721 or "DPPA"), in support of its finding that the NH DPA does not apply to the conduct at issue in these cases. A-

676; A-680 n.2; A-681. The federal DPPA is about how "[a] ***State department of motor vehicles, and any officer, employee, or contractor thereof***, shall not knowingly disclose or otherwise make available to any person or entity" certain information. 18 U.S.C. § 2721(a) (emphasis added). The NH DPA, conversely, applies to non-governmental actors – including "[a] ***person* ... *in the course of business***" like Defendants-Appellees. N.H. RSA 260:14, IX(b) (emphasis added). All but one of the cases cited by the lower court pertain only to the federal DPPA and do not so much as mention the NH DPA. In the other case, the Supreme Court of New Hampshire made an independent and de novo interpretation of the New Hampshire DPA, and, in doing so, did not analyze any case law relating to or language from the federal DPPA whatsoever. *See DeVere v. Att'y Gen.*, 146 N.H. 762, 765-769 (2001).

Fifth, the New Hampshire Code of Administrative Rules makes clear that the NH DPA applies to the records, persons, and conduct at issue. N.H. Code Admin. R., Saf-C 5606.06(a) concerns "***personal information from any license***[.]" Given that RSA 260:14, I(c) states: "'Personal information' means ***information in motor vehicle records*** that identifies a person," (emphasis added), this proves driver's licenses are covered by 260:14. Additionally, N.H. Code Admin. R ., Saf-C 5606.06(a) describes how a financial institution, insurance company or legitimate business must "not sell, rent, transfer or make the information available to another ***in violation of***

federal law and the provisions of **RSA 260:14**" and must "not use the personal information, in whole or in part, obtained from a license to create, combine or link with any other data … ***in violation of*** federal law and the provisions of **RSA 260:14**[.]" (emphasis added). This makes it abundantly clear that Defendants-Appellants' conduct can and does violate the NH DPA.

Plaintiffs-Appellants allege that Defendants-Appellees shared their driver's license information with TRE each time Plaintiffs-Appellants returned a purchase without a receipt at one of the Defendants-Appellees' stores. A-19 ¶¶ 2-3; A-297 ¶¶ 2-3; A-622 ¶¶ 2-3. The New Hampshire DPA prohibits "a person" from "knowingly" disclosing "information from a department record" to a known unauthorized person. RSA 260:14, IX(a). The NH DPA also prohibits "a person" from "sell[ing], rent[ing], offer[ing], and expos[ing] for sale motor vehicle records to another person." *Id.*, IX(b). Since driver's license information is a "department record" and a "motor vehicle record," and since Plaintiffs-Appellants allege this information was "disclosed" and "offered" to TRE, Plaintiffs-Appellants have properly alleged violations of RSA 260:14, IX(a) and IX(b). The lower court erred in holding otherwise.

## ARGUMENT

## I.   STANDARD OF REVIEW

A lower court's decision on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted is an issue of law reviewed *de novo*. *See, e.g.*, *Martin v. Applied Cellular Tech., Inc.*, 284 F.3d 1, 5-6 (1st Cir. 2002) (citing *TAG/ICIB Services, Inc. v. Pan American Grain Co.*, 215 F.3d 172, 175 (1st Cir.2000)); *Cardigan Mountain Sch. v. N.H. Ins. Co.*, 787 F.3d 82, 84 (1st Cir. 2015) (citation omitted); *Artuso v. Vertex Pharm., Inc.*, 637 F.3d 1, 5 (1st Cir. 2011) (citation omitted).  In conducting this review, the Court "accept[s] as true all well-pled facts alleged in the complaint and draw[s] all reasonable inferences in [the plaintiff's] favor." *Evergreen Partnering Grp., Inc. v. Pactiv Corp.*, 720 F.3d 33, 36 (1st Cir. 2013) (citation omitted). A plaintiff's allegations are sufficient to overcome a Rule 12(b)(6) motion if they contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547, 127 S. Ct. 1955, 1960, 167 L. Ed. 2d 929 (2007).

## II.  THE LOWER COURT ERRED BY FINDING THAT DEFENDANTS-APPELLEES DID NOT VIOLATE N.H. RSA 260:14 IX(B)

The lower court held that Plaintiffs-Appellants could not allege a violation of RSA 260:14 IX(b) because a driver's license kept in their own "possession" is not a "motor vehicle record" under the NH DPA.  A-682-83 (Home Depot); A-284 (TJ Maxx minute order granting motion to dismiss "for the reasons set forth in … <u>Smith</u>

<u>v. Home Depot</u>"); A-275-76 (The Gap et al. order granting motion to dismiss "for the same reasons … in *Home Depot*").  The court also held that, despite Plaintiffs-Appellants' allegations that Defendants-Appellees shared sensitive driver's license information with The Retail Equation without consent, Defendants-Appellees did not "offer" Plaintiffs-Appellants' driver's license information in violation of the statute because mere disclosure of the information without monetary exchange is not prohibited by the statute.  A-682-83.  Those were both error, and this Court should reverse.

First, the clear, unambiguous text of the NH DPA does not limit "motor vehicle records" to records kept at the Department of Safety.  Driver's licenses, even in the possession of individual persons, are still considered "motor vehicle records." Second, under the plain meaning of the statute's text and the canons of interpretation, the term "offer" does not require a monetary transaction.

## A.     Driver's Licenses Are "Motor Vehicle Records"

A private right of action exists under NH DPA when a person "in the course of business, … knowingly sells, rents, offers, or exposes for sale motor vehicle records to another person in violation of this section."  RSA 260:14, IX(b).  A motor vehicle record is defined as "all … licenses issued or revoked by the department relative to motor vehicles and the information, including personal information, contained in them."  *Id.*, I(a).

The lower court, however, held that, driver's licenses kept "in the possession of the person" are not "motor vehicle records." A-682-83 (Home Depot). The court drew this conclusion from the fact that the NH DPA contains an unrelated provision which "[p]rovide[s] that 'proper motor vehicle records shall be kept by the department at its office.'" A-683 (quoting RSA 260:14, II(a)). The court also cited Department of Safety regulations stating that "[m]otor vehicle records are maintained at the Department of Safety" and "[a]ny authorized person requesting motor vehicle record information shall submit the appropriate form … prior to the department's release of information." *Id.* The court noted that although the redisclosure of motor vehicle records violates the statute, "the more plausible reading is that the statutory phrase 'motor vehicle records' includes only those 'licenses' 'kept by the department at its office.'" A-683 (quoting RSA 260:14, I(a), II(a)).

The lower court erred in arriving at this conclusion. The lower court's interpretation directly contradicts the clear and unambiguous text of the statute, which defines "motor vehicle records" to include "licenses issued or revoked by the department relative to motor vehicles" in the definition section and does not limit the definition to documents held at the Department of Safety. RSA 260:14, I(a). Common sense dictates that a "license," as described by the plain text of RSA 260:14, I(a), is a license regardless of who currently holds it.

The court noted that the statute, in a separate section, reads: "[p]roper motor vehicle records shall be kept by the department at its office." RSA 260:14, II(a). But the fact that the statute includes the phrase "proper" indicates that it is referring to a subset of "motor vehicle records." *See Proper*, *Black's Law Dictionary* (11th ed. 2019) ("peculiar; distinctive"); *Petition of State*, 159 N.H. 456, 457 (2009) ("We must give effect to all words in a statute, and presume that the legislature did not enact superfluous or redundant words.") (citing *Winnacunnet Coop. Sch. Dist. v. Town of Seabrook*, 148 N.H. 519, 525–26 (2002)). Further, the inclusion of the words "issued" and "revoked" in the foregoing definition makes clear that a driver's license can leave the exclusive possession of the Department while still being a motor vehicle record as defined by the statue. The Department would not be able to "revoke" something that is in its exclusive possession – such a "revocation" would have no effect. *See Revoke*, *Black's Law Dictionary* (11th ed. 2019) ("To annul or make void *by taking back or recalling*; to cancel, rescind, repeal, or reverse.") (emphasis added); *c.f.* N.H. RSA 260:14, IX(a) ("In addition, any professional or business license *issued by this state and held by such person may*, upon conviction and at the discretion of the court, *be revoked permanently or suspended*.")

The lower court also improperly relied on certain language in the NH DPA's implementing regulations to exclude driver's licenses in licensees' personal possession from the definition of "motor vehicle records." First, the implementing

regulations cited by the lower court are not concerned with driver's licenses in the hands of individuals because the regulations only concern how one can obtain motor vehicle records from the Department of Safety.  *See* N.H. RSA 260:14, VII ("Motor vehicle records relating to a person may be made available … in such form and manner as the department prescribes."); N.H. RSA 260:14, XII ("The commissioner of safety shall adopt rules to implement this section."); *see also* N.H. Code Admin. R., Saf-C 5602.01(b) ("[m]ail requests" instructions); *see generally id.* 5602.01(c) ("in person" requests); 5602 (providing instructions for "Procedures for Obtaining Motor Vehicle Records").

Second, as stated above, any interpretation that "motor vehicle records" refers only to records kept at the Department of Safety conflicts with the plain meaning of the NH DPA, which does not state that requirement.  Thus, even if the regulations somehow do interpret the NH DPA, it is well established that a court "will not defer to an agency's statutory interpretation if it clearly conflicts with the statutory language or if it is plainly incorrect." G*enworth Life Ins. Co. v. New Hampshire Dep't of Ins.*, 174 N.H. 78, 83 (2021) (citing *Appeal of Town of Seabrook*, 163 N.H. 635, 644 (2012)).  Further, "[a]dministrative rules may not add to, detract from, or modify the statute which they are intended to implement."  *Doe v. Comm'r of New Hampshire Dep't of Health & Hum. Servs.*, 174 N.H. 239, 254 (2021) (quoting *Petition of Strandell*, 132 N.H. 110, 119 (1989)).

The lower court, in a footnote, stated that its interpretation of "motor vehicle records" is "all the more plausible" because another statute, RSA 263:12, X, "already prohibits scanning, recording, retaining, or storing 'personal information, as defined in RSA 260:14, obtained from any license,' irrespective of whether the license was obtained from the department or an individual." A-683 n.5. But that is an improper inference because RSA 263:12 covers different conduct from RSA 260:14. Namely, RSA 263:12 prohibits "scan[ning], record[ing], retain[ing], [and] stor[ing]" driver's license information (i.e., *by a first party gatherer* of driver's license personal information, like an entity physically handling a driver's license). Conversely, RSA 260:14 bars the "knowing disclosure" of "information from a department record" and the "offering" of "motor vehicle records to another person[]" (i.e., *to a third party recipient* of driver's license personal information, like TRE).

In sum, the term "motor vehicle records" includes all "licenses issued" by the Department of Safety. That unambiguously includes licenses in the hands of individual drivers and is not limited to records stored at the Department. As such, the lower court erred in holding that the definition of "motor vehicle records" does not apply to Plaintiffs-Appellants' driver's license information.

## B. Defendants-Appellees "Offered" Plaintiffs-Appellants' License Information To TRE

Plaintiffs-Appellants allege that the Defendants-Appellees, respectively, took their driver's license information and shared it with TRE without consent. A-684-

86. The statute penalizes a person who "knowingly sells, rents, offers, or exposes for sale motor vehicle records to another person." RSA 260:14, IX(b).

The lower court held that Plaintiffs-Appellants did not allege a violation of RSA 260:14, IX(b) because there were no allegations that TRE received money for its services from the Defendants-Appellees. A-684-86. Specifically, the court held that "[i]t cannot be seriously contended from [Plaintiffs-Appellants'] factual allegations that [Defendants-Appellees'] alleged disclosures amounted to a sale, a rental, or an exposure for sale of Smith's personal information." A-683. The lower court also held that Plaintiffs-Appellants cannot allege that Defendants-Appellees "offered" their driver's license information to TRE because "offer," in the context of the statute, requires "a monetary transaction." A-685-86. And the lower court rejected the argument that "offers," under its dictionary definition, does not require a monetary transaction – citing "the familiar principle of statutory interpretation" that a "broader statutory term 'takes on the more specialized character of its neighbors.'" A-686 (quoting *Home Gas Corp. v. Strafford Fuels, Inc.*, 130 N.H. 74, 82 (1987)). The lower court's conclusions were error for multiple reasons.

First, the canons of statutory interpretation plainly demonstrate that an "offer" does not need to be for a monetary exchange. The plain meaning of "offer" is "[t]he act or an instance of presenting something for acceptance; specif., a statement that one is willing to do something for another person or to give that person something."

*Offer*, *Black's Law Dictionary* (11th ed. 2019); see also *Offer*, *Black's Law Dictionary* (6th ed. 1990) ("To bring to or before; to present for acceptance or rejection; to hold out or proffer; to make a proposal to; to exhibit something that may be taken or received or not."). That plain meaning does not require monetary exchange in the slightest.

Further, the "last antecedent rule" combined with the Oxford comma placed in the statute after the word "offer," shows that the modifying phrase "for sale" applies only to the term "exposes." New Hampshire courts have held that the "last antecedent rule" is an "established rule of statutory construction." M*ountain Valley Mall Assocs. v. Municipality of Conway*, 745 A.2d 481, 488 (N.H. 2000) (citing *United States v. Ven–Fuel, Inc.*, 758 F.2d 741, 751 (1st Cir.1985)). Specifically, it "is the general rule of statutory as well as grammatical construction that a modifying clause is confined to the last antecedent unless there is something in the subject matter or dominant purpose which requires a different interpretation." *Id.* (citing *Moulton v. Brookline Rent Control Bd.*, 385 Mass. 228, 431 N.E.2d 225, 227 (1982)). "Therefore, qualifying phrases are to be applied to the words or phrases immediately preceding and are not to be construed as extending to others more remote." *Id.* (citing *Russell v. Boston Wyman, Inc.*, 410 Mass. 1005, 574 N.E.2d 379, 380 (1991)). This is especially true given that the legislature placed a comma after the word "offer"; the comma indicates that the word "offer" stands by itself.

*See* Antonin Scalia & Bryan A. Garner, *Reading Law* 161 (2012) ("Punctuation in a legal text will rarely change the meaning of a word, but it will often determine whether a modifying phrase or clause applies to all that preceded it or only to a part."). Moreover, it would make no sense if "for sale" were to modify each word in the series; can one "sell for sale" or "rent for sale"? The term "for sale," therefore only modifies the word "exposes" and the term "offers" stands on its own. *See* N.H. Rev. Stat. Ann. § 260:14, IX(b) ("A person is guilty of a class B felony if, in the course of business, such person knowingly sells, rents, offers, or exposes for sale motor vehicle records to another person in violation of this section.").

Second, the exposure of the driver's license information was not "simply an exchange irrespective of financial gain" because Defendants-Appellees pay money to TRE for their monitoring services. *See* A-19 n.1; A-298 n.1; A-623 n.1. Therefore, the lower court's holding was in error even under the *noscitur a sociis* canon. Under that canon, the term "offer" does not require an actual sale and instead merely requires connection with a monetary exchange. This is evident from the last term, "exposes for sale," which does not require an actual sale to violate the statute. If the statute *did* require an actual sale, the words "exposes for sale" would be superfluous; the statute already prohibits "sells." *See Petition of State*, 159 N.H. at 457 ("We must give effect to all words in a statute, and presume that the legislature

did not enact superfluous or redundant words.").[1] So, just as "exposes for sale" at most needs to be in connection with a sale, but requires no actual sale, "offered," at most, should take on a similar "general sense" that the "offer" be in connection with a commercial transaction. *See* 2A Shambie Singer, Sutherland Statutes and Statutory Construction § 47:16 (7th ed.) ("[O]rdinarily, the coupling of words denotes an intention that they should be understood in the same ***general*** sense.") (emphasis added).

In conclusion, because Defendants-Appellees "offered" Plaintiffs-Appellants' driver's license information to a third party without consent, the Court should reverse the lower court's decisions and find that Plaintiffs-Appellants have properly pleaded a violation of RSA 260:14, IX(b).

## III. THE LOWER COURT ERRED BY FINDING THAT DEFENDANTS-APPELLEES DID NOT VIOLATE N.H. RSA 260:14 IX(A)

The lower court held that "because [a] personal driver's license, which [Plaintiffs-Appellants] kept in [their] own possession, is not a 'department record,' [they] fail[] to state a claim for a violation of RSA 260:14, IX(a)." A-681 (Home Depot); A-284 (TJ Maxx minute order granting motion to dismiss "for the reasons set forth in … Smith v. Home Depot"); A-275-76 (The Gap et al. order granting motion to dismiss "for the same reasons … in Home Depot"). Specifically, the lower

---

[1] Indeed, for the same reason, requiring ***any*** monetary exchange element for an "offer" would render an "offer" violation redundant and duplicative of an "exposes for sale" violation of the statute. That would be an impermissible reading. *See id.*

court held that a driver's license was not a "department record" because "that phrase [as] used in RSA 260:14, IX(a) means authentic copies of documents deposited and kept with [] the New Hampshire department of safety." A-680. These holdings were both in error. The lower court was wrong, with respect to both its reasoning and the law itself.

### A. Driver's Licenses Are "Department Records" Regardless Of Who Currently Possesses Them

N.H. RSA 260:14, IX(a) provides, in pertinent part: "A person is guilty of a misdemeanor if such person knowingly discloses information from a department record to a person known by such person to be an unauthorized person[.]"

As established *supra*, and as is plain from the language of the statute itself, drivers' licenses are motor vehicle records. *Supra* § I.A. And under the only logical reading of the statute, the General Court intended for the term "department record" to be at least as capacious as "motor vehicle record." As the lower court noted, "the term 'department' is defined in [the NH DPA's] implementing regulations as 'the New Hampshire department of safety.'" A-680. Per the New Hampshire Department of Safety's website, the Department of Safety "presently consists of seven divisions overseen by the Office of the Commissioner[:]" the Division of Administration; the Division of Emergency Services and Communications; the Division of Fire Safety; the Division of Homeland Security and Emergency Management; the ***Division of Motor Vehicles***; and the New Hampshire State Police.

New Hampshire Department of Safety, *About Us: Divisions*, https://www.dos.nh.gov/about-us/divisions. Thus, while a "department record" (i.e., a New Hampshire Department of Safety record) could plausibly be associated with any of the foregoing seven "divisions," a "motor vehicle record" is associated with "the department relative to motor vehicles" (i.e., a New Hampshire Division of Motor Vehicles record). N.H. RSA 260:14, I(a), *see also* N.H. RSA 260:1 ("There shall be a division of motor vehicles within the department of safety as provided in RSA 21-P:8."). Accordingly, the lower court's analysis of the term "department record" was wrong because it departed from the plain text of the statute. A driver's license and the personal information contained therein is plainly a "department record."

The lower court's reasoning was erroneous for multiple additional reasons. <u>First</u>, the lower court erred by arbitrarily imposing a highly restrictive definition of the word "record." *See* A-680 (citing <u>Webster's Third New Int'l Dictionary</u> 1898 (Philip Babcock Gove et al. eds., 1993)) (finding that "the plain meaning of 'record' in this context is 'an authentic official copy of a document entered in a book or deposited in the keeping of some officer designated by law.'"). This narrow construction was not warranted.

A "record" is more properly defined, in the legal sense, as "information that is inscribed on a tangible medium or that, having been stored in an electronic or other medium, is retrievable in perceivable form." *Record*, *Black's Law Dictionary* (11th

ed. 2019); *see also Record, Black's Law Dictionary* (6th ed. 1990) ("A written account of some act, court proceeding, transaction, or instrument, drawn up, under authority of law, by a proper officer, and designed to remain as a memorial or permanent evidence of the matters to which it relates"). Under these sensible definitions of "record," the statute covers information that is from a driver's license – a "tangible medium" that is "drawn up, under authority of law, by a proper officer and designed to remain as a memorial" of a driver's eligibility to operate a motor vehicle.

This aligns with how "records," in common parlance, are not always (or even usually) "authentic official cop[ies] of a document entered in a book or deposited in the keeping of some officer designated by law." For example, there are financial records (i.e., receipts, invoices, spreadsheets, etc. kept by businesses and individuals), historical records (i.e., diaries, newspapers, etc.), and medical records (i.e., those kept by healthcare providers). Even Merriam-Webster, which the lower court cited, defines "record" as: "something that records: such as … a: something that recalls or relates past events[;] b: an official document that records the acts of a public body or officer[;] c: an authentic official copy of a document deposited with a legally designated officer[;] d: the official copy of the papers used in a law case[;] … something on which sound or visual images have been recorded[.]" Merriam-Webster, *Record*, https://www.merriam-webster.com/dictionary/record. Obviously,

a driver's license is, minimally, "something that records"; "something that recalls or relates past events" (i.e., one's licensure by the New Hampshire Division of Motor Vehicles); and "something on which sound or visual images have been recorded[.]"

Thus, "department records" include all records of the New Hampshire Department of Safety and its seven different internal divisions, while "motor vehicle records" include only New Hampshire Division of Motor Vehicles records: "applications, reports required by law, registrations, histories, certificates, and licenses issued or revoked by the *department relative to motor vehicles* and the information, including personal information, contained in them."  N.H. RSA 260:14, I(a) (emphasis added).  Put differently:  All "motor vehicle records" are "department records," but not all "department records" are "motor vehicle records."

Plaintiffs-Appellants' interpretation makes sense in the context of the New Hampshire *Driver Privacy Act*.  Plainly, the General Court of New Hampshire wished to afford greater protection to the narrower universe of highly sensitive "motor vehicle records," compared to the broader universe of "department records."  Under N.H. RSA 260:14, IX(a), a person is "guilty of a *misdemeanor* if such person knowingly discloses information from a *department record* to a person known by such person to be an unauthorized person[,]" while, under N.H. RSA 260:14, IX(b), "[a] person is guilty of a *class B felony* if, in the course of business, such person knowingly sells, rents, offers, or exposes for sale *motor vehicle records* to another

person in violation of this section." (emphasis added).  Thus, to read the statute harmoniously, the Court should read the term "department records" as a broader term that is inclusive of "motor vehicle records."  *See*, *e.g.*, *DeVere*, 146 N.H. at 768 ("When examining statutory language, however, we do not merely look at isolated phrases, but construe all parts of a statute together to effectuate its overall purpose and to avoid an absurd result.").

**B.    The Lower Court Improperly Conflated The Federal DPPA With The NH DPA**

The lower court erred by conflating the NH DPA and the federal Drivers Privacy Protection Act (18 U.S. Code § 2721), in support of its finding that the NH DPA does not apply to the conduct at issue in these cases.  A-676; A-680 n.2; A-681.  The NH DPA is completely different than the federal DPPA, contains different language governing different (and broader) conduct, and is the result of a different and separate legislative history.  As such, any interpretation and case law regarding the federal DPPA has no bearing on the New Hampshire DPA.

As an initial matter, the federal DPPA is substantively different than the New Hampshire DPA.  In its very first line, the federal DPPA makes clear that it is about how "[a] *State department of motor vehicles, and any officer, employee, or contractor thereof*, shall not knowingly disclose or otherwise make available to any person or entity" certain information.  18 U.S.C. § 2721(a) (emphasis added).  Thus, the federal DPPA does not regulate the activity of any other person.  *See*, *e.g.*, *Siegler*

*v. Best Buy Co. of Minnesota*, 519 F. App'x 604, 605 (11th Cir. 2013) ("the [DPPA] is concerned only with information disclosed, in the first instance, by state DMVs").

The New Hampshire DPA, in contrast, goes far beyond regulating the New Hampshire DMV because it restricts what any "person" can do with department and motor vehicle records, including but not limited to, "in the course of business." *See*, *e.g.*, N.H. RSA 260:14, V(c)(1) ("No person shall be required to provide his or her written or express consent to the release of personal information ***as a condition of doing business with any other person or legitimate business***.") (emphasis added); N.H. RSA 260:14, IX(a) ("A ***person*** is guilty of a misdemeanor if such person knowingly discloses information from a department record to a person known by such person to be an unauthorized person[,] … [and] any ***professional or business license issued by this state and held by such person*** may, upon conviction and at the discretion of the court, be revoked permanently or suspended.") (emphasis added); N.H. RSA 260:14, IX(b) ("A ***person*** is guilty of a class B felony ***if, in the course of business, such person*** knowingly sells, rents, offers, or exposes for sale motor vehicle records to another person in violation of this section.") (emphasis added). The foregoing statutory language is abundantly clear; the NH DPA governs ***persons***, like Defendants-Appellees, that (unlike the New Hampshire DMV) ***do business*** in the state of New Hampshire.

The lower court cites several cases that apply solely to the federal DPPA, do not reference or discuss the NH DPA whatsoever, and are thus irrelevant to the instant matters. A-675-681 (citing *Reno v. Condon*, 528 U.S. 141 (2000); *Andrews v. Sirius XM Radio Inc.*, 932 F.3d 1253 (9th Cir. 2019); *Figueroa v. Taylor*, 2006 WL 3022966 (S.D.N.Y. Oct. 23, 2006)). It is well established that decisions of federal courts interpreting federal law are not binding on state courts. *See, e.g.*, *People v. Williams*, 16 Cal. 4th 153, 190 (1997), as modified (Sept. 24, 1997). And, unlike other New Hampshire statutes, the NH DPA does not contain any language inviting "courts to interpret its provisions in accordance with federal law." *See Donovan v. Digital Equip. Corp.*, 883 F. Supp. 775, 785 (D.N.H. 1994); *cf.* N.H. RSA 356:14 (1984) ("In any action or prosecution under this chapter, the courts may be guided by interpretations of the United States' antitrust laws.").

Moreover, a plain reading of the NH DPA indicates that it was enacted to expand privacy protections to New Hampshire residents relative to the DPPA. Indeed, in the sole case cited by the lower court that actually interpreted the NH DPA, *DeVere v. Att'y Gen.*, Justice Lynn recognized that "[a] comparison of the federal and state statutes shows that the General Court chose to provide somewhat greater protection to New Hampshire citizens than the federal statute demands." *DeVere v. Att'y Gen.*, 146 N.H. 762, 772 (2001) (Lynn, J., dissenting). And while the Supreme Court of New Hampshire found that "the State legislature enacted the

[New Hampshire DPA] to comply with the [federal] DPPA," *DeVere*, 146 N.H. at 765, the Supreme Court has never stated that any limits and case law applicable to the federal DPPA somehow also apply to the New Hampshire DPA. In fact, the opposite is true: The Supreme Court of New Hampshire went on to make an independent and de novo interpretation of the New Hampshire DPA, and, in doing so, did not analyze any case law relating to or language from the federal DPPA whatsoever. *See id.* at 765-69. The lower court should have done the same. This Court should follow the Supreme Court of New Hampshire's guidance and analyze the NH DPA on purely statutory interpretation grounds. *See id*. at 765-69.

### C.   The New Hampshire Code of Administrative Rules Supports Plaintiffs-Appellants' Reading

The Court must, as the lower court suggests, seek to "understand the statutory language in light of the policy sought to be advanced by the entire statutory scheme." A-676 (cleaned up). Here, New Hampshire's Code of Administrative Rules makes clear that the NH DPA applies to the records, persons, and conduct at issue.

N.H. Code Admin. R., Saf-C 5606.06(a), reads, in full:

(a)  Notwithstanding any rule to the contrary, the department authorizes the recording, storing or retaining of ***personal information from any license*** in any electronic form or format by a financial institution, insurance company, or legitimate business as defined in RSA 260:14, I(d), if the financial institution, insurance company or legitimate business:

(1)  Is obtaining the information for use in the conduct of the business to verify the identity of the consumer or to prevent fraud;

(2) Does not sell, rent, ***transfer or make the information available to another in violation of*** federal law and ***the provisions of RSA 260:14***;

(3) Does not use the ***personal information***, in whole or in part, ***obtained from a license*** to create, combine or link with any other data on any database by the financial institution, insurance company, or legitimate business which is sold, rent, transferred or made available to another person ***in violation of*** federal law and ***the provisions of RSA 260:14***; and

(4) Is acting in compliance with applicable federal laws, including Health Insurance Portability and Accountability Act (P.L. 104-191), USA Patriot Act (P.L. 107-56), Gramm-Leach-Bliley Act (P.L. 106-102) and Fair Credit Reporting Act (15 U.S.C. §1681 *et seq*.).

(emphasis added).[2]  This language makes two things abundantly clear.  First, the "transfer" or "mak[ing] available" of "personal information from any license" can be done "in violation of… the provisions of RSA 260:14."  *See id*.  That is directly inconsistent with the lower court's holdings.  *See* A-683 (holding that RSA 260:14 is limited to information held by the Department of Safety).  Second, Saf-C 5606.06 makes clear that there is "personal information" in "driver's licenses."  That also contradicts the lower court.  *See id*.  And importantly, Defendants-Appellees' conduct does not fall within the safe harbors provided by Saf-C 5606.06.[3]

---

[2] Saf-C 5601.14, defines "Personal information" as "'personal information' as defined in RSA 260:14, I(c)[,]" and  N.H. RSA 260:14, I(c), defines "Personal information" as "***information in motor vehicle records*** that identifies a person, including a person's photograph or computerized image, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information." (emphasis added).

[3] No Defendant-Appellee is a "legitimate business" as referenced in Saf-C

Finally, the lower court incorrectly held that "[u]nder [Plaintiffs-Appellants'] expansive reading, [] RSA 260:14, IX(a) would prohibit the disclosure of information that happens to be contained within a document kept by the department, even when that information is obtained from a document that is not—and never was—in the department's possession." A-681. That reasoning is flawed because ignores the plain limiting text of the misdemeanor violation. It is ***impossible*** for a person to violate N.H. RSA 260:14, IX(a) as the lower court envisions because IX(a) says: "A person is guilty of a misdemeanor if such person knowingly discloses information ***from a department record*** to a person known by such person to be an unauthorized person[.]" Disclosure is thus plainly not a violation of the NH DPA when the disclosed information, as the lower court put it, "is obtained from a document that is not—and never was—in the department's possession." A-681. The requirement for the information disclosed to be "***from a department record***" (as well as needing to be disclosed "to a person known … to be an ***unauthorized person***") would serve as clear limits on the lower court's envisioned slippery slope.

---

5606.06(a) because Defendants-Appellees do not "receive[] compensation in connection with matters of motor vehicle or driver safety or theft, motor vehicle emissions, and motor vehicle market research activities, including survey research." *See* N.H. RSA 260:14, I(d) (defining "Legitimate business"). Defendants-Appellees are also not compliant with Saf-C 5606.06(b), which states that "business entities [must] comply with all of the provision of Saf-C 5606.06(a) (1) – (4), [and] receive the consent of the license holder[.]" Defendants-Appellees do not comply with 5606.06(a) (1) – (4) (at the least, violating (2) and (3)), and they do not receive license holders' consent regarding TRE. *See* A-20 ¶ 5; A-298 ¶ 5; A-623 ¶ 5.

As set out *supra*, a driver's license is a "department record" and a "motor vehicle record" under N.H. RSA 260:14 because that is what the text and context of the statute prescribe. *See* N.H. RSA 260:14, I(a) ("'Motor vehicle records' means all applications, reports required by law, registrations, histories, certificates, and *licenses issued or revoked* by the department relative to motor vehicles *and the information, including personal information, contained in them*.") (emphasis added); New Hampshire Department Of Safety, *About Us: Divisions*, https://www.dos.nh.gov/about-us/divisions (the Department of Safety "presently consists of seven divisions overseen by the Office of the Commissioner[:]" the Division of Administration; the Division of Emergency Services and Communications; the Division of Fire Safety; the Division of Homeland Security and Emergency Management; the *Division of Motor Vehicles*; and the New Hampshire State Police).

## IV. PLAINTIFFS-APPELLANTS PROPERLY PLED CLAIMS UNDER N.H. RSA 260:14, IX (A) AND (B)

Plaintiffs-Appellants allege that Defendants-Appellees shared their driver's license information with TRE each time they returned a purchase at one of their stores. A-19 ¶¶ 2-3; A-297 ¶¶ 2-3; A-622 ¶¶ 2-3. The New Hampshire DPA prohibits "a person" from "knowingly" disclosing "information from a department record" to a known unauthorized person. RSA 260:14, IX(a). The NH DPA also prohibits "a person" from "sell[ing], rent[ing], offer[ing], and expos[ing] for sale

motor vehicle records to another person." *Id.*, IX(b). Since driver's license information is a "department record" and a "motor vehicle record," and since Plaintiffs-Appellants allege this information was "disclosed" and "offered" to TRE, Plaintiffs-Appellants have properly alleged violations of RSA 260:14, IX(a) and IX(b).

## V.  IN THE ALTERNATIVE, THE FACTORS FOR CERTIFICATION ARE MET HERE

To the extent that the Court disagrees with Plaintiffs-Appellants' reading of the NH DPA, Plaintiffs-Appellants respectfully request that the Court certify these questions to the Supreme Court of New Hampshire. "At its discretion, a federal court of appeals may certify questions of state law to the state's highest court." *In re Hundley*, 603 F.3d 95, 98 (1st Cir. 2010) (citation omitted). The First Circuit "may certify a question to the New Hampshire Supreme Court when the issue of state law 'may be determinative' of the case, and if 'it appears [that] ... there is no controlling precedent in the decisions of'" the New Hampshire Supreme Court. *Castagnaro v. Bank of New York Mellon*, 772 F.3d 734, 736 (1st Cir. 2014) (quoting N.H. Sup.Ct. R. 34). Those factors are met here. The questions of interpretation of the NH DPA raised by Plaintiffs-Appellants are plainly outcome-determinative, as each of the Matters was dismissed by the lower court on statutory interpretation grounds. And Plaintiffs-Appellants are unaware of the existence of any controlling precedent on these questions in the decisions of the New Hampshire Supreme Court.

Although Plaintiffs-Appellants believe that the Court is capable of answering these questions without certification, to the extent the Court is unsure, Plaintiffs-Appellants respectfully request that the Court certify any questions that it may have to the Supreme Court of New Hampshire.

## CONCLUSION

For the forgoing reasons, Plaintiffs-Appellants respectfully request that this Court reverse the lower court's holdings and find that Plaintiffs-Appellants properly allege that Defendants-Appellees violated RSA 260:14, IX(a) and IX(b) by "disclosing" and "offering" their sensitive driver's license information to a third party without consent. In the alternative, Plaintiffs-Appellants respectfully request that this Court certify any outstanding questions of statutory interpretation to the Supreme Court of New Hampshire.

Dated: April 24, 2024                  Respectfully submitted,

**BURSOR & FISHER, P.A**.

By:  */s/ Philip L. Fraietta*
      Philip L. Fraietta

Philip L. Fraietta
Matthew A. Girardi
1330 Avenue of the Americas, Fl 32
New York, NY  10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
    Email: pfraietta@bursor.com
      mgirardi@bursor.com

**DOUGLAS LEONARD & GARVEY PC**
Benjamin Thomas King
14 South St, Ste 5
Concord, NH 03301
Telephone: 603-224-1988
Email: benjamin@nhlawoffice.com

*Attorneys for Plaintiffs-Appellants*

**FED. R. APP. P. 32(a)(7)(B) CERTIFICATION**

I hereby certify that this brief contains 8,614 words – no more than the 13,000 words permitted by Fed. R. App. P. 32(a)(7)(B).


Dated:  April 24, 2024                    Respectfully submitted,

                                          _____/s/ Philip L. Fraietta_____
                                          Philip L. Fraietta

                                          *Attorney for Plaintiffs-Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that on April 24, 2024, I electronically transmitted this Motion to Consolidate to the Clerk of the Court using the Court's ECF system. I further certify that counsel of record for Respondent are being served with a copy of this motion by electronic means via the Court's ECF system.


Dated: April 24, 2024                 Respectfully submitted,

                                    */s/ Philip L. Fraietta*
                                      Philip L. Fraietta

                                   *Attorney for Plaintiffs-Appellants*

# Addendum

KeyCite Yellow Flag - Negative Treatment

Proposed Legislation

> Revised Statutes Annotated of the State of New Hampshire
>   Title XXI. Motor Vehicles (Ch. 259 to 269) (Refs & Annos)
>     Chapter 260. Administration of Motor Vehicle Laws (Refs & Annos)
>       Powers and Duties

N.H. Rev. Stat. § 260:14

260:14 Records and Certification.

Effective: July 1, 2023

Currentness

I. In this section:

(a) "Motor vehicle records" means all applications, reports required by law, registrations, histories, certificates, and licenses issued or revoked by the department relative to motor vehicles and the information, including personal information, contained in them.

(b) "Person" means an individual, organization or entity, but shall not include this state or an agency thereof. "Person" shall include the personal representative of any person injured or killed in the motor vehicle accident, including the person's conservator, executor, administrator, or next of kin as defined in RSA 259:66-a.

(c) "Personal information" means information in motor vehicle records that identifies a person, including a person's photograph or computerized image, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information.

(d) "Legitimate business" means a business which is registered in New Hampshire and which receives compensation in connection with matters of motor vehicle or driver safety or theft, motor vehicle emissions, and motor vehicle market research activities, including survey research.

II. (a) Proper motor vehicle records shall be kept by the department at its office. Notwithstanding RSA 91-A or any other provision of law to the contrary, except as otherwise provided in this section, such records shall not be public records or open to the inspection of any person.

(b) Copies of such records, duly attested and certified by the director, or designee, shall be as competent evidence in any court within this state as the original record or document would be if produced by such person as the legal custodian. A hearings examiner shall be considered a legal custodian of motor vehicle records for the purpose of testifying at a trial.

II-a. The accident report, the technical accident reconstruction report, any repair estimate, or any similar document that constitutes a motor vehicle record that is created or received as a result of any accident or collision involving a vehicle owned or leased by the state, a county, a city, a town, or a local public entity shall be a governmental record subject to inspection and disclosure in accordance with RSA 91-A except when inspection or disclosure would risk exposure of undercover law enforcement activity. Any report of a violation of this title by an employee or official of a county, a city, a town, or a local public entity while engaged in official business in a vehicle owned or leased by the state, a county, a city, a town, or a local public entity shall be a governmental record subject to inspection and disclosure in accordance with RSA 91-A.

III. Motor vehicle records may be made available pursuant to a court order or in response to a request from a state, a political subdivision of a state, the federal government, or a law enforcement agency for use in official business. The request shall be on a case-by-case basis. Any records received pursuant to this paragraph shall not be further transferred or otherwise made available to any other person or listed entity not authorized under this paragraph. Any records received pursuant to this paragraph shall not be used, further transferred, or otherwise made available to any other person or entity for the purpose of creating or enhancing a federal identification database.

III-a. The name and last known address of the owner of a vehicle used in violation of RSA 236:31-b and the physical characteristics of such vehicle may be made available to the department of transportation or to a nongovernmental contracted agent of the department of transportation for toll collection purposes only as identified by a toll collection system, as defined by RSA 236:31, I(i). Any records received under this paragraph shall not be used for purposes other than for toll collection and shall not be further transferred or otherwise made available to any other person or entity that is not a contracted agent of the department of transportation for toll collection. The nongovernmental contracted agent of the department of transportation for toll collection is prohibited from releasing the motor vehicle records to a third party or from using the records for the collection of debts outside the toll collection system. Notwithstanding the provisions of RSA 260:14, XIV, the department of transportation shall be responsible for ensuring its own and its contracted agent's compliance with this section, and the commissioner, upon determining that the department of transportation or its contracted agent has violated any provisions of this section may issue a written order prohibiting the department of transportation and its contracted agent from receiving motor vehicle records commencing 10 days following the issuance of the order and lasting for no longer than 5 years, unless the commissioner is satisfied that procedures are in place and will be enforced to ensure compliance with this chapter.

III-b. A corporation that is operating under an active DD Form 441 Department of Defense Security Agreement and has a facility located within the state may request that the commissioner grant a waiver to the corporation that would permit it to obtain the name and address of the owner of any motor vehicle that is on or adjacent to the corporation's property within the state of New Hampshire. The corporation shall only use information received under this paragraph for security purposes. The commissioner may grant or renew the waiver for any period up to one year. During the period when the waiver is valid, the police department of jurisdiction shall, upon request, provide to the corporation's security operations center supervisor, or equivalent person, the name and address of the owner of any motor vehicle on or adjacent to the corporation's property within the state of New Hampshire.

III-c. The name and last known address of the owner of a vehicle used in violation of a toll collection system and the physical characteristics of such vehicle may be made available to another state, or to a statutory or nongovernmental contracted agent of such other state for the collection of a toll in such other state as identified by a toll collection system, as defined by RSA 236:31, I(i), whether the vehicle was used in violation of an electronic toll collection system or the vehicle was identified by a toll collection monitoring system when there is no cash option in the toll lanes. Any records received under this paragraph shall not be used for purposes other than for toll collection and shall not be further transferred or otherwise made available to a person or entity that is not a statutory or contracted agent of such other state for toll collection. The other state or statutory or nongovernmental contracted agent of such other state is prohibited from releasing the motor vehicle records to a third party or from using the records for the collection of debts outside the toll collection system. Notwithstanding the provisions of RSA

260:14, XIV, such other state shall be responsible for ensuring its own and its statutory or contracted agent's compliance with this section, and the commissioner, upon determining that such other state or its statutory or contracted agent has violated any provisions of this section may issue a written order prohibiting such other state and its statutory or contracted agent from receiving motor vehicle records commencing 10 business days following the issuance of the order and lasting no longer than 5 years, unless the commissioner is satisfied that procedures are in place and will be enforced to ensure compliance with this chapter.

III-d. A municipal agent appointed pursuant to RSA 261:74-a may provide the name of a person who has registered a motor vehicle together with the permit number, vehicle identification number, and fee paid in such transaction to a nongovernmental contracted agent of a municipality for audit purposes only for the purposes of RSA 41:9, VI and RSA 41:31-c. Any information received by the nongovernmental contracted agent shall not be further transferred or otherwise made available to any other person. The municipal agent shall not provide the requested information without a written request from the nongovernmental contracted agent. The municipal agent shall keep the written request on file together with a copy of the information provided.

IV. (a) Except for a person's photograph, computerized image, and social security number, motor vehicle records shall be made available, upon proof of the identity of the person requesting the records and representation by such person on a form satisfactory to the department that the records will be strictly limited to one of the following described uses:

> (1) Motor vehicle manufacturers, or their authorized agents, for use in connection with matters of motor vehicle or driver safety and theft; motor vehicle emissions; motor vehicle product alterations, recalls, or advisories; performance monitoring of motor vehicles and dealers by motor vehicle manufacturers; and removal of non-owner records from the original owner records of motor vehicle manufacturers to carry out the purposes of the Automobile Information Disclosure Act, the Motor Vehicle Information and Cost Saving Act, the National Traffic and Motor Vehicle Safety Act of 1966, the Anti-Car Theft Act of 1992, and the Clean Air Act.

> (2) Insurance companies authorized to write automobile and personal excess liability insurance policies, or by self-insured entities, or their authorized agents, for use in connection with claims investigation activities, anti-fraud activities, rating, or underwriting.

> (b) No motor vehicle records made available under this paragraph shall be sold, rented, transferred, or otherwise made available in whole or in part, in any form or format, directly or indirectly, to another person, except that an authorized agent may make such records available to any principal on whose behalf the records were sought if the name of that principal was provided to the department at the time the records were sought.

IV-a. (a) Except for a person's photograph, computerized image, and social security number, motor vehicle records and at least monthly electronic bulk files indicating changes in driving violations and driver license status shall be made available upon proof of the identity of the person requesting the records and representation by such person on a form satisfactory to the department that the records will be strictly limited to one or both of the following described uses:

> (1) For use by an entity that employs drivers in the course of their business, or an authorized agent of such an entity, which requires a motor vehicle record or a monthly notification of changes to motor vehicle records in connection with pre-employment or continued employment screening of employees for driver safety reasons; or

(2) For use with respect to requests as to whether a driver meets the requirements of RSA 359-U:12.

(b) No motor vehicle records made available under this paragraph shall be sold, rented, transferred, or otherwise made available in whole or in part, in any form or format, directly or indirectly, to another person, except that an authorized agent may make such records available to any principal on whose behalf the records were sought if the name of that principal was provided to the department at the time the records were sought.

(c) Any person who makes a request under this paragraph shall have first obtained the written consent of the person whose records are being requested. The written consent shall be retained for a period of 3 years and shall be made available upon request to the division for inspection. Motor vehicle records obtained under this paragraph shall not be subject to the notarization requirements of RSA 260:14, VII.

V. (a) Except for a person's photograph, computerized image and social security number, motor vehicle records may be made available upon proof of the identity of the person requesting the records and representation by such person on a form satisfactory to the department that the use of the records will be strictly limited to one or more of the following described uses, which use shall be specified in the request:

(1) For use by a legitimate business in connection with matters of motor vehicle or driver safety and theft; motor vehicle emissions; motor vehicle product alterations, recalls, or advisories; performance monitoring of motor vehicles, motor vehicle parts and dealers; motor vehicle market research activities, including survey research, so long as the name and address of the individual is not disclosed by the department; and removal of non-owner records from the original owner records of motor vehicle manufacturers.

(2) For use with respect to a request for a named person's motor vehicle records in connection with any civil, criminal, administrative or arbitral proceeding in any court or government agency, including the service of process and the execution or enforcement of judgments and orders, pursuant to an order of the court or agency.

(3) For use with respect to a request for a named person's motor vehicle records by a banking or similar institution, in the normal course of business, but only to verify the accuracy of personal information submitted by the individual to the bank and if such information is incorrect, to obtain the correct information, but only for the purposes of preventing fraud by, pursuing legal remedies against, or recovering on a debt or security interest against, the individual.

(4) For use by a legitimate business in research activities, and for use by a legitimate business in statistical reports, so long as personal information is not disclosed by the department.

(5) For use with respect to a request for a named person's motor vehicle records in providing notice to the owners of towed or impounded vehicles.

(6) For use with respect to a request for a named person's motor vehicle records by any private investigative agency or security service licensed by this state for any purpose permitted under subparagraph V(a) other than subparagraph V(a)(8).

(7) For use with respect to a request for a named person's motor vehicle records by an employer or its agent or insurer to obtain or verify information relating to a holder of a commercial driver's license that is required under the Commercial Motor Vehicle Safety Act of 1986.

(8) For bulk distribution for surveys, marketing or solicitations, provided that the express consent of each person to whom such motor vehicle records pertain has been obtained. Such consent may be withdrawn at any time.

(9) For use with respect to a request for a named person's motor vehicle records by a public utility, as defined in RSA 362:2 and over which the public utilities commission exercised jurisdiction on July 1, 1996, to perform its public service obligations, provided that the named person's express consent has been obtained. Such consent may be withdrawn at any time.

(10) For use by life insurance companies authorized to write life insurance policies, or their authorized agents, on a case-by-case basis, in connection with claims investigation, rating, and underwriting, provided that the insurance company has provided written notice to the named person that the person's motor vehicle records will be accessed.

(b)(1) A person may elect at any time not to have any personal information pertaining to such person made available as provided in subparagraphs V(a)(1), (2), (3), (4), (5), (6) and (7). A person who so elects shall inform the department in writing, and the department shall not thereafter make the personal information available, nor shall the department make available a list of the persons who have so elected. Any elections previously made under this section shall continue in effect.

(2) The department shall inform members of the public in a clear, simple and conspicuous manner of their right to make the election permitted by this subparagraph at each of its offices at which it requests personal information. The department shall also request that the same be done by municipal agents of the department appointed pursuant to RSA 261:74-a.

(c)(1) No person shall be required to provide his or her written or express consent to the release of personal information as a condition of doing business with any other person or legitimate business.

(2) For purposes of this section, "express consent" means upon knowledge and affirmative agreement of the person to whom the personal information pertains a written statement dated and executed by that person that is separate and distinct from any other document and that contains at least the following:

(A) A specific description of the personal information to be disclosed.

(B) The name of the entity that is authorized to make the disclosure.

(C) Identification of the entity or entities authorized to receive the disclosure and a specific description of the purpose for which such disclosure will be made.

(D) The expiration date of the authorization, which shall be no more than 2 years from the date of its execution.

(E) A clear, simple, and conspicuous statement that providing express consent to the release of personal information is not required in order to do business with the entity that is authorized to make the disclosure.

(F) An acknowledgment by the person executing the statement that he or she has the right to revoke the authorization at any time.

VI. (a) Except as provided in subparagraph (b), an authorized recipient of personal information for a particular use under the provisions of subparagraph V(a) may not sell, rent, transfer, or make the information available to another person for the same or for any other use.

(b) An authorized recipient of personal information for a particular use under subparagraphs V(a)(1), (4), (8), (9), and (10) may sell, rent, transfer or make the information available to another person for the same use only, subject to the limitations in the particular subparagraph.

(c) An authorized recipient of personal information for a particular use under the provisions of subparagraph VI(b) who sells, rents, transfers or uses the information, or makes the information available to another person, for the same use shall be required by the department to (1) maintain for a period of not less than 5 years records identifying each person who receives the information and the permitted purpose for which the information will be used; and (2) make such records available to the department on request.

VII. A person shall have access to motor vehicle records relating to such person upon proof of identity. Motor vehicle records relating to a person may be made available to any other person upon proof, in such form and manner as the department prescribes, that the notarized, written consent of the person who is the subject of the record has been obtained.

VII-a. Nothing in this section shall prohibit a law enforcement agency of a political subdivision or its employees from releasing the following reports of information, upon request of the parties identified herein, on a form prescribed by the department:

(a) Copies of reports of motor vehicle accidents prepared by the agency, and filed with the division pursuant to RSA 264:25 and RSA 264:26, to an owner, operator, or passenger of a vehicle involved in said accident, pedestrian hit by a vehicle in said accident, owner of property damaged in said accident, the insurance company of any of the foregoing parties, or the authorized legal representative of any of the aforementioned. Such agency may charge a reasonable fee therefor, to be deposited into the general fund of said political subdivision.

(b) Copies of reports of motor vehicle accidents prepared by the agency that are not required to be reported pursuant to RSA 264:25 and RSA 264:26, to an owner, operator, or passenger of a vehicle involved in said accident, pedestrian hit by a vehicle in said accident, owner of property damaged in said accident, the insurance company of any of the foregoing parties, or the authorized legal representative of any of the aforementioned. Such agency may charge a reasonable fee therefor, to be deposited into the general fund of said political subdivision.

(c) Information obtained by the law enforcement agency that accident participants are required to exchange pursuant to RSA 264:25, to an owner, operator, or passenger of a vehicle involved in said accident, pedestrian hit by a vehicle in said accident, owner of property damaged in said accident, or the authorized legal representative of any of the aforementioned.

VIII. Nothing in this section shall prohibit the department in its discretion from releasing to the public any person's name, age or motor vehicle offenses only.

VIII-a. (a) No person who has been convicted of any offense enumerated in RSA 632-A, RSA 645, or RSA 649-A, or a reasonably equivalent offense under the law of another state or the federal government, shall be entitled to apply for or to receive a waiver from the department of safety relative to retention of the person's driver's license image, likeness, or photograph. Such image, likeness, or photograph shall be retained in the records of the department of safety.

(b) No person who has been convicted of DWI, aggravated DWI, or a reasonably equivalent offense under the laws of another state, shall be entitled to apply for or to receive a waiver from the department of safety relative to retention of the person's driver's license image, likeness, or photograph until at least 10 years after the date of the conviction. Such image, likeness, or photograph shall be retained in the records of the department of safety.

(c) No person who has been convicted of a felony in this state or in any other jurisdiction shall be entitled to apply for or to receive a waiver from the department of safety relative to retention of the person's driver's license image, likeness, or photograph until at least 10 years after the date of conviction. Such image, likeness, or photograph shall be retained in the records of the department of safety.

IX. (a) A person is guilty of a misdemeanor if such person knowingly discloses information from a department record to a person known by such person to be an unauthorized person; knowingly makes a false representation to obtain information from a department record; or knowingly uses such information for any use other than the use authorized by the department. In addition, any professional or business license issued by this state and held by such person may, upon conviction and at the discretion of the court, be revoked permanently or suspended. Each such unauthorized disclosure, unauthorized use or false representation shall be considered a separate offense.

(b) A person is guilty of a class B felony if, in the course of business, such person knowingly sells, rents, offers, or exposes for sale motor vehicle records to another person in violation of this section.

X. The department and any person aggrieved by a violation of this section may bring a civil action under this section and, if successful, shall be awarded the greater of actual damages or liquidated damages of $2,500 for each violation; reasonable attorneys' fees and other litigation costs reasonably incurred; and such other equitable relief as the court determines to be appropriate.

XI. Neither the state nor its agencies or employees shall be civilly liable for any improper use or release of motor vehicle records to any person obtaining such records as provided in this section.

XI-a. No political subdivision or its agencies or employees shall be civilly liable for any improper use of or release of motor vehicle records to any person obtaining such records as provided in this section.

XII. The commissioner of safety shall adopt rules to implement this section. Notwithstanding any other provisions of law, such rules shall be exempt from the provisions of RSA 541-A.

XIII. Notwithstanding the provisions of RSA 91-A, the department may charge reasonable fees for the release of information under this section. In determining a reasonable fee, the department shall consider factors such as labor and production costs, as well as the market value of the information. All such fees shall be deposited in the fire standards and training and emergency medical services fund established in RSA 21-P:12-d.

XIV. Any person determined by the commissioner, after hearing, to have violated any provisions of this section may be barred from receiving motor vehicle records for a period not to exceed 5 years.

XV. (a) Motor vehicle records obtained from the department under the provisions of subparagraph V(a)(4) and (8) shall be obtained separately for each use specified under subparagraph V(a)(4) and (8), one use to a request, provided that the commissioner may grant a request from a legitimate business for multiple uses if:

(1) The commissioner determines the legitimate business has responsible business practices including, but not limited to, data privacy and security policies.

(2) The legitimate business provides the commissioner with a list of all users of the information, including the name and address of the business, provided, however, that such list shall not be a public record available for public inspection pursuant to RSA 91-A.

(3) The subsequent users are required by the legitimate business to certify compliance with RSA 260:14 and shall be conspicuously informed that they are prohibited from reselling, transferring, or assigning any motor vehicle record information, including personal information.

(4) The legitimate business certifies its compliance with RSA 260:14 on a form prescribed by the department, including posting a bond if required by the commissioner.

(b) All legitimate businesses approved under this paragraph shall be charged a reasonable fee as determined by the commissioner that reflects the number of multiple uses authorized, the volume of the legitimate business' resale business, and the market value of the information.

XVI. The commissioner may limit the information contained in motor vehicle records released to any person under this section if it is determined by the commissioner that the release of certain personal information is unnecessary.

XVII. The provisions of this section shall be severable if any phrase, clause, sentence or provision is declared contrary to the constitution of this state or the United States.

**Credits**
**Source.** 1921, 119:23. PL 99:6. 1929, 55:1. RL 115:6. RSA 259:10. 1981, 146:1. 1990, 79:1. 1996, 295:1. 1997, 66:1. 2000, 319:2-11. 2001, 91:6; 134:1-4; 208:1. 2002, 242:2-4. 2003, 261:1, 2. 2004, 241:4. 2006, 108:1; 317:12. 2010, 241:3. 2011, 167:1. 2013, 186:11, eff. Aug. 31, 2013. 2015, 134:1, eff. Jan. 1, 2016; 242:4-6, eff. Sept. 11, 2015. 2016, 71:16, eff. May 10,

2016. 2017, 65:1, eff. Aug. 1, 2017; 139:2, 3, eff. June 16, 2017. 2018, 256:1, eff. Aug. 11, 2018. 2021, 206:2, Pt. IX, Sec. 1, eff. Aug. 10, 2021. 2023, 30:3, eff. July 1, 2023.

Notes of Decisions (16)

Copyright © 2024 by the State of New Hampshire Office of the Director of Legislative Services and Thomson Reuters/West 2024.

N.H. Rev. Stat. § 260:14, NH ST § 260:14
Current through Chapter 8 of the 2024 Reg. Sess. Some statute sections may be more current, see credit for details.

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Jodi Bourgeois

v.                                          Case No. 23-cv-394-LM-TSM

The Gap, Inc. et al

JUDGMENT

In accordance with the Order by Chief Judge Landya B.
McCafferty dated December 20, 2023, judgment is hereby entered.

By the Court:

/s/ Daniel J. Lynch
Daniel J. Lynch
Clerk of Court

Date: December 20, 2023

cc: Counsel of Record

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Jodi Bourgeois

      v.                     Civil No. 23-cv-394-LM-TSM

The Gap, Inc., et al

**O R D E R**

Jodi Bourgeois brings this putative class action alleging that defendants The Gap, Inc., Old Navy, LLC, Banana Republic, LLC, and Athleta, LLC, violated the New Hampshire Driver Privacy Act ("Driver Privacy Act"), RSA 260:14, by transmitting information obtained from Bourgeois's license to a third party without her consent. Presently before the court is defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). See doc. no. 18.

Bourgeois's complaint is materially identical to the complaint in Smith v. Home Depot U.S.A., Inc., Civ. No. 23-cv-294-LM.[1] She brings two counts, each of which arise under the Driver Privacy Act. Count I alleges that defendants violated RSA 260:14, IX(a) by disclosing information from her driver's license to an entity known as "The Retail Equation." Count II alleges that defendants violated paragraph IX(b) of that same statute by engaging in that same conduct.

---

[1] Because the issues are identical, the court denies defendants' request for a hearing on the motion.

The court grants defendants' motion to dismiss (doc. no. 18) for the same reasons it granted the motion to dismiss in <u>Home Depot</u>.[2] With respect to Count I, Bourgeois's driver's license is not a "department record" within the meaning of RSA 260:14, IX(a). With respect to Count II, her driver's license is not a "motor vehicle record" within the meaning of RSA 260:14, IX(b), and Bourgeois failed to plausibly allege that defendants sold, rented, offered, or exposed for sale her driver's license or the information contained therein.

The clerk of court is directed to enter judgment and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

December 20, 2023

cc:    Counsel of Record

---

[2] The court's order granting the motion to dismiss in <u>Home Depot</u> is doc. no. 21. <u>See also</u> <u>Smith v. Home Depot U.S.A., Inc.,</u> --- F. Supp. 3d. ---, 2023 WL 8787578 (D.N.H. Dec. 19, 2023).

2

1                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW HAMPSHIRE
2

3     * * * * * * * * * * * * * * * *
                                    *
4     PAMELA SMITH,individually and  *
      on behalf of all others        *
5     similarly situated,            *   No. 1:23-cv-00294-LM
                                     *   October 25, 2023
6                       Plaintiff.   *   2:10 p.m.
                                     *
7                  V.                *
                                     *
8     HOME DEPOT U.S.A., INC.,       *
                                     *
9                       Defendant.   *
                                     *
10                                    *
                                     *
11    * * * * * * * * * * * * * * * *

12              TRANSCRIPT OF MOTION HEARING
                 HELD VIA VIDEOCONFERENCE
13         BEFORE THE HONORABLE LANDYA B. MCCAFFERTY

14

APPEARANCES:
15

16    For the Plaintiff:      Philip Lawrence Fraietta, Esq.
                              Matthew A. Girardi, Esq.
17                            Bursor & Fisher, P.A.

18                            Benjamin T. King, Esq.
                              Douglas Leonard & Garvey PC
19

20    For the Defendant:      Sidney Stewart Haskins, II, Esq.
                              King & Spalding LLP
21
                              Kathleen M. Mahan, Esq.
22                            Hinckley Allen & Snyder LLP

23    Court Reporter:         Brenda K. Hancock, RMR, CRR
                              Official Court Reporter
24                            United States District Court
                              55 Pleasant Street
25                            Concord, NH 03301
                              (603) 225-1454

1          P  R  O  C  E  E  D  I  N  G  S

2          THE CLERK:  For the record, this is a Motion to

3   Dismiss hearing in <u>Pamela Smith versus Home Depot U.S.A.</u>  the

4   case number is 23-cv-294-LM.

5          If counsel could please identify themselves for the

6   record, starting with the plaintiff, please.

7          MR. FRAIETTA:  Good afternoon, your Honor.

8          MR. KING:  Benjamin King, local counsel for the

9   plaintiff.

10         MR. FRAIETTA:  Sorry, Ben.

11         Good afternoon, your Honor.  Phil Fraietta of Bursor &

12  Fisher, counsel for the plaintiff.

13         MR. GIRARDI:  Good afternoon, your Honor.  Matthew

14  Girardi, Bursor & Fisher, also counsel for the plaintiff.

15         MS. MAHAN:  Good afternoon, your Honor.  Kate Mahan

16  for Home Depot.

17         MR. HASKINS:  Good afternoon, your Honor.  Stewart

18  Haskins with King & Spalding also on behalf of Home Depot.

19         THE COURT:  All right.  This is Home Depot's Motion to

20  Dismiss.  I would normally, I think, have you proceed first,

21  but I think what I'd rather do is tell you where I am in

22  thinking on this today before I hear your oral arguments and

23  have a response.

24         Now, my question to you about the certification was

25  based on the fact that the New Hampshire Supreme Court hasn't

really spoken on these precise provisions, but, having said
that, I would like to focus on the purpose of the statute and
the bulk of the statute, and I just find it hard to imagine
that the New Hampshire Legislature was creating this statute to
criminalize conduct like occurred in this case.  The way I'm
reading the statute as a whole, I agree that the specific
criminal provisions are written in such a way that attorneys
might read those and bring a claim like this, but the whole
statute, and I'm happy to go through it section by section, is
basically talking about the Department of Safety, DMV, and
providing records that are kept by the Department, by the
State, to individuals or then to businesses or other entities.
Obviously, the statute wants to prohibit the State from leaking
any of that private information to unauthorized people, people
or businesses who are going to go out and then sell it and try
to make money off their identities and their information.

          The DeVere case makes clear that the statute in New
Hampshire was enacted to comply with the federal statute, and I
think that Justice Lynn's dissent in that case goes through the
ways in which the New Hampshire statute is more specific,
provides greater rights and protection, and they all are
consistent with the notion that New Hampshire doesn't want
businesses being able to walk out of DMV with people's
photographs, Social Security number and such, and so they
limited what can be disclosed and a couple of other things, as

1    Justice Lynn makes clear.

2         And the thought that -- frankly, I need to say this.

3    The thought that attorneys who are relying on case law related

4    to the federal statute are somehow engaging in sanctionable

5    conduct by arguing in reliance on those or making some sort of

6    argument similar to Article III standing, that statement in

7    your memoranda was not credible and not helpful.  So, let me

8    say that.

9         I think that, as I read the federal cases, they make

10   clear, absolutely crystal clear, that the federal statute is

11   talking about agencies disclosing to individuals, businesses

12   and then businesses then making unauthorized disclosures; and

13   that's what they're getting at, and, in fact, the legislative

14   history, the sponsor of the State statute said as much.

15        I'm happy to go through the statute, but <u>DeVere</u> says

16   look at the whole statute; you can't just look at little

17   pieces.

18        So, tell me how I get to a claim against Home Depot, a

19   business, who is using this information in a way to protect

20   itself against fraud and where a person, the individual,

21   actually handed Home Depot their own driver's license.  It's

22   not as though Home Depot went to the department and then asked

23   for the information and them retrieved the information.  This

24   is an individual person who handed Home Depot their license and

25   consented to Home Depot taking their license.

1        I'm not sure that I need the New Hampshire Supreme

2   Court to tell me that this statute means otherwise, but I want

3   to give you an opportunity -- to the extent it would allow

4   that, I would need the New Hampshire Supreme Court to say as

5   much, because, as I read this, the entirety of the statute is

6   designed to protect agency release and unauthorized disclosures

7   and is addressing the very same problem that the federal

8   statute was addressing with slightly greater protection.

9        So, having said that, tell me why I am wrong and why I

10  do need to certify this case to the New Hampshire Supreme Court

11  to tell me that your position is correct, even though it does

12  not seem consistent with the statute as a whole, and I'm not

13  sure you've given me one case that would support that

14  interpretation, but maybe I missed that.  If you have,

15  obviously I would want to know what they are.

16       Go ahead, Attorney Fraietta.

17       MR. FRAIETTA:  Sure, your Honor.  So, as an initial

18  matter, we believe that the New Hampshire statute is

19  unquestionably broader than the federal statute.  The federal

20  statute is specifically limited to "A State department of motor

21  vehicles," or "any officer, employee or contractor thereof..."

22  That's a direct quote out of the federal statute that's in the

23  Section 2721(a).

24       This statute, the New Hampshire statute, by contrast,

25  applies to any person, and those words have meaning, and we

believe that the reason that the New Hampshire statute applies

to any person is to prevent conduct exactly like Home Depot's

conduct.  We do have some support for that in connection with

the complaint.  We attach a letter that was sent to Home Depot

about 20 years ago now by the -- sent by the Attorney General's

Office -- excuse me -- by the Commissioner of the Department of

Safety, accusing Home Depot of violations of the Driver Privacy

Act.  That's an exhibit to our complaint.  It's Exhibit A to

our complaint.

Where we take issue with the way that Home Depot has

characterized this case and the way that I think your Honor

characterized it is the idea that it criminalizes Home Depot

for engaging in antifraud activity.  That's not the way that we

allege our case.  The way we allege our case is that Home Depot

took information from our client who certainly provided that

information to Home Depot willingly, but our client did not

authorize Home Depot to provide that information to The Retail

Equation, who is an undisclosed and unnamed third party.  Home

Depot could have and, in our opinion, is required to by law,

obtained consent.  That's all it needs to do in order to make

the further disclosure of the information to The Retail

Equation, but it doesn't do so.  It hides that from people like

my client, and that is, in sum and substance, the violation.

Now, you asked what case law we cited to support our

interpretation of the statute, and, your Honor, when you issued

1   the procedural order I came here prepared to tell you that we

2   do believe you ought to certify this question to the State

3   Supreme Court.  There is no direct, to use your Honor's

4   phrasing, controlling authority that makes the answer to any of

5   these questions unambiguous.  This is an issue of first

6   impression.  It's the first time any of these issues have ever

7   been raised, and they're being raised not only in this case but

8   about a half-dozen other cases in this District, many of which

9   are in front of you.  So, I do think certification to the

10  Supreme Court is appropriate here to try and ascertain the

11  meaning of these various statutory terms that are at issue.

12          THE COURT:  Do you have any case that would help me

13  decide that your position with respect to this statute renders

14  -- that there's some ambiguity in the statute that would allow

15  for that interpretation?  My order, my procedural order, would

16  suggest as much.  I'm certainly -- I would feel uncomfortable

17  reaching the result you want the Court to reach without the New

18  Hampshire Supreme Court indicating that a statute that looks,

19  quacks, walks like a duck is something other than a duck.  I

20  would need the New Hampshire Supreme Court to tell me that.

21          But ultimately, as I'm reading through this statute,

22  it seems fairly clear that it just is meant to cover other

23  conduct and not criminalize the instance where an individual is

24  handing their license to somebody or some business.  It's

25  talking about somebody going to the department, requesting

1    records, like Mr. DeVere, he's a person, as you say, whether or

2    not he is entitled to get those records and whether they can

3    disclose them to him.  And so, then they would go to the

4    statute and figure out is he an authorized person?  Can we do

5    this?  And then, if Mr. DeVere were to then go and use it in

6    some unauthorized way or disclose it, it would be a

7    misdemeanor.  If he were then to go sell or rent or lease or

8    otherwise offer it for money, then it becomes a felony.

9          So, tell me is there a case, is there case law that

10   would help me get to the position where I would say to the

11   Supreme Court, I need your help on this; this statute is

12   ambiguous with respect to whether Home Depot can be sued here?

13         MR. FRAIETTA:  Yes, your Honor.  We would submit that

14   that case law is the general interpretation of statutes, which

15   is a textual interpretation.  We cite it throughout our brief.

16   But, in our view, this is a straightforward textual

17   interpretation of the statute.

18         And, again, we just, we disagree with the reading of

19   our complaint that it's criminalizing Home Depot for collecting

20   drivers' licenses.  The act that we are challenging is the

21   further disclosure of that information to an unauthorized third

22   party, and I think that's exactly at the heart of this statute.

23   This statute was designed in part -- your Honor referenced the

24   legislative history.  The legislative history talks extensively

25   about privacy and protecting these records from getting out to

1    the wrong people.  That's why the statute is designed to

2    protect these motor vehicle and department records from being

3    disclosed to unauthorized recipients.  The list of authorized

4    recipients is very, very narrow.  The regulation defining

5    "legitimate business" is narrow.  It's cited in our brief, and

6    it essentially covers businesses that are intertwined in the

7    motor vehicle world, car dealers, people like that.  So, we

8    think that leans in our favor.

9         And the other thing that would lean in our favor of a

10   certification is that there are many states that have similar

11   laws that protect driver information.  New Hampshire, based on

12   our understanding, is the only state that does not have an

13   express carveout for antifraud protection.  Illinois, for

14   example, has a statute with an express carveout for antifraud

15   protection.  They didn't put that in the Illinois statute.

16   They could have, but they didn't, and we believe that renders

17   the conclusion that the reason they didn't do that is that,

18   even for antifraud measures, Home Depot needs to take the

19   simple step to put its customers on notice and get their

20   consent.  That's all we're asking them to do, and they failed

21   to do so.

22        So, the long answer to your question and the short

23   answer, rather is, no, there's no directly on-point case

24   authority interpreting the statute.  I think the procedural

25   order acknowledges that.

1       There is, however, the general principles of statutory

2   interpretation, as we laid out in our brief and as Home Depot

3   laid out in its brief, that I think leads to at least the

4   conclusion that there are some ambiguities here that the State

5   Supreme Court could resolve, which, as I said, would not only

6   be helpful in this case but a half dozen others.

7       THE COURT:  And that is another argument that goes

8   toward certification.  There are so many cases that it would

9   resolve and it would be dispositive of.  But ultimately to send

10  something to the New Hampshire Supreme Court, it really does

11  have to be something that's not clear and is unambiguous.  And

12  obviously statutory interpretation is clearly what would govern

13  my analysis of this, and in DeVere, analyzing the very same

14  statute, the court makes clear that the principal starting

15  point is the statute as a whole.

16      And so, you don't look at just Subsection 9(a) and(b),

17  you look at the entirety of the statute, and throughout the

18  statute it is talking about -- much of it is written in the

19  passive voice, but it's talking about the department and "made

20  available under this paragraph" and "shall be made available,"

21  and it gives other clues throughout, breadcrumbs throughout the

22  statute that I think makes it clear the context is that the

23  Department of Safety, the DMV, is looking at, for instance,

24  just -- I mean, just one example, but there are many, IV(b) is

25  talking about, "No motor vehicle records made available under

1    this paragraph shall be," et cetera, et cetera, and then it

2    ends with "...was provided to the department at the time the

3    records were sought."

4         That's one example, but there are numerous mentions of

5    it must be "...on a form satisfactory to the department...,"

6    "...is not disclosed by the department..."  That's repeated in

7    several provisions.  "A person...shall inform the department in

8    writing, and the department shall not thereafter make the

9    personal information available, nor shall the department make

10   available a list of the persons..."  It just goes on

11   throughout, and I could keep going.  But that's the way the

12   whole statute is written.

13        And then, of course, you've got IX, which is really

14   what your statutory interpretation rests on, the language, "A

15   person is guilty of a misdemeanor if such person knowingly,

16   et cetera."

17        So, I have a hard time ignoring the ultimate, the

18   threshold question of statutory interpretation under New

19   Hampshire law, which requires that I read IX in context of the

20   whole.

21        MR. FRAIETTA:  If I may respond, your Honor, we

22   certainly don't dispute that statutes ought to be read as a

23   whole.  That's clearly said in Devry (ph) and that's a clear

24   principle of statutory interpretation in general, but there are

25   sections of this statute that I could point to that also deal

1    with the context outside of records requested from the

2    department in addition to Section IX.  One such section would

3    be Section V(c).  V(c) here is talking about being required to

4    provide written or express consent to the release of personal

5    information as a condition with doing business with any other

6    person or legitimate business.  That has nothing to do with the

7    department.  That specifically talks about doing a transaction

8    with another person, such as Home Depot or any other legitimate

9    business, and it lays out here a number of criterion which need

10   to be met in order to make such a requirement, but that's one

11   example of the statute talking to the provision of motor

12   vehicle records outside of the context of the department.

13          THE COURT:  I agree with you.  I have that one blocked

14   off.  I completely agree with you that that provision,

15   Subsection (c), does read in that manner.

16          MR. FRAIETTA:  So, we would submit that that

17   provision, in conjunction with IX, it suggests that this

18   statute, while certainly aimed at the conduct of the

19   department, we don't dispute that, is aimed beyond the conduct

20   of the department as well.  I think this statute just goes to

21   not only the department's conduct but the conduct of businesses

22   and others who are receiving personal information and

23   requesting it in the State of New Hampshire; and, again, I

24   think the legislative history supports that kind of an

25   interpretation as well.

1          THE COURT:  Subsection V is starting with a general

2   statement about -- it makes the exception, and it talks about

3   permitted uses.  So, (a), Subsection (a) is all a list of

4   permitted uses, and consent is definitely I think mentioned in

5   this subsection, too.  But (b) then says that the person can

6   elect that they do not want -- "...make the personal

7   information available...," "...a list of the persons..." Yeah.

8   So, this is giving people the opportunity to say, I don't want

9   my records to be available.  And (c)(1), (c) is somewhat

10  consistent with that whole notion of consent with respect to

11  records that DMV is going to provide to somebody like

12  Mr. DeVere, who comes to the front desk and asks for records.

13         So, it's not artfully drawn, but I don't think (c)(1)

14  provides the kind of reach in terms of what you're talking

15  about, that it would reach so far as to encompass what happened

16  in this case.

17         MR. FRAIETTA:  If I may provide another

18  interpretation --

19         THE COURT:  Sure.

20         MR. FRAIETTA:  -- I think another way to read that is

21  that (b), so V(b) is certainly aimed at allowing customers or

22  residents in New Hampshire to say that, I don't want the

23  department to disclose my information to certain people.  So be

24  it.  I think then (c) is going a step further and saying that

25  you also have the right to make sure your information doesn't

1    get disclosed in connection with a business transaction,

2    because otherwise it would kind of render (b) a little bit

3    pointless, right, if I said, I don't want the department to

4    disclose it, but then some other business says, Well, if you

5    want to do business with us you have to disclose it?  So, I

6    think it's adding an additional layer of protection.  That's

7    how I would read it.  But I agree that there's some ambiguity

8    there, which, again, counsel is in favor of certification.

9         I would also point out another thing that counts in

10   favor of certification is the letter from the Commissioner of

11   the Department of Safety that we attach to our complaint.  That

12   letter, it's Exhibit A to our complaint, clearly the

13   Commissioner of the Department of Safety, at least in 2002,

14   when this statute was on the books, thought that Home Depot

15   could engage in conduct that has nothing to do with the

16   department.  This is conduct about Home Depot's collection of

17   drivers' licenses in connection with returns, and the

18   Commissioner issued this cease and desist letter to Home Depot,

19   telling them to stop doing that.  So, I think that would also

20   counsel in favor of ambiguity.

21        THE COURT:  Wasn't Home Depot keeping and storing the

22   information from drivers' licenses?  I get your point, I take

23   your point, but --

24        MR. FRAIETTA:  Yes.  The facts alleged in the cease

25   and desist letter are not directly on point with the facts of

1    this case, but they're similar and I think similar enough to

2    raise the question of ambiguity.

3         THE COURT:  Yeah.  I think that (c)(1) -- I agree that

4    that one stood out to me, but ultimately I think there's a way

5    to read that consistent with the rest of the statute as a whole

6    that would forbid businesses from requiring consent to

7    disclosure of records from the DMV, and that would be

8    consistent with the statute as a whole.

9         I interrupted you several times.  Do you have anything

10   further you want to say in favor of certification?  Clearly, if

11   I were to issue an opinion that would be consistent with what

12   my interpretation is at this moment, certification is a better

13   result for you, because I'm not seeing a private right of

14   action and criminalization of the conduct at issue here, but I

15   want to give you a full and fair opportunity to persuade me

16   that I am wrong about that or there's at least ambiguity about

17   that.

18        MR. FRAIETTA:  Yeah.  And I appreciate that, your

19   Honor.  Obviously, we respectfully disagree.  I think I've made

20   the points that I could make here for the record.  I would note

21   that we do believe certification is appropriate.  We actually

22   reached out to Mr. Haskins and his team a few days after your

23   order, procedural order, came out and suggested certification,

24   so that was my feeling before coming in here.  Obviously, your

25   leanings -- we understand that we would be better off going --

1   getting certified, but that's not the driving force here.  I

2   just believe that for the efficiency of the court's docket it

3   makes sense to have the New Hampshire Supreme Court resolve

4   these issues.

5          THE COURT:  All right.  Attorney Haskins.

6          MR. HASKINS:  Well, thank you, your Honor.  I guess I

7   would start by saying I agree with your interpretation of the

8   statute.  A retired partner at our firm once told me that, If

9   the judge wants to rule in your favor, you should let them, and

10  certainly we think that your Honor has read the statute the

11  same way that we've read it and the same way that other

12  retailers in the state have read it, and the existence of these

13  cases simply proves that Mr. Fraietta and his team have tried

14  to come up with a novel argument here to stretch the statute

15  and take it to a place that it doesn't belong.  This Act is not

16  a new statute and, in our view, it's not an ambiguous one.  The

17  New Hampshire Driver Privacy Act was enacted to place

18  guardrails on the disclosure of motor vehicle information that

19  was obtained from the department --

20         THE COURT:  Did Home Depot -- how do you respond to

21  the argument about the cease and desist letter, where, you

22  know, the department is reaching out to Home Depot as a

23  business and saying, Hey, you can't keep this information?

24  That seems to suggest their interpretation -- they have an

25  interpretation somewhat consistent with plaintiff's.

1      MR. HASKINS:  Well, I think I would say a couple of

2  things in response to that, your Honor.  First of all, I think,

3  at best, that letter sets forth the department's position at

4  the time that Home Depot could not retain and store personal

5  information that was obtained from a driver's license; and, in

6  fact, the letter specifically says that the entity that can

7  retain and store that information and keep motor vehicle

8  records is the Department of Safety.  In other words, the

9  letter does not say that Home Depot could not collect or

10  request that information for purposes of the return.  It said

11  that it could not retain and store it.  I think that's a key

12  distinction.

13      THE COURT:  I agree, but ultimately was Home Depot at

14  the time receiving the drivers' license information from its

15  customers?

16      MR. HASKINS:  I think it was requesting that

17  information at the time.

18      I think the other point that I would make is, and we

19  mentioned this in our reply brief, that there is and, in fact,

20  it was passed in 2002, there's a new chapter, 263, that

21  specifically addresses drivers' license information, and that

22  section or that statute proscribes under what circumstances

23  drivers' license information can be scanned, collected

24  retained, et cetera, and, of course, that statutory section

25  would not have been necessary for the Legislature to pass and

1    include that information in the statute if department records

2    or motor vehicle records encompassed -- or obtained from a

3    customer encompassed drivers' license records obtained from a

4    customer.  So, I think that's the other distinguishing fact on

5    that cease and desist letter, is the time at which it was

6    written.  There's now a statute that directly addresses the

7    specific conduct that they were pointing to that Home Depot was

8    engaging in.

9         THE COURT:  Anything further, Attorney Fraietta?  Am I

10   saying your name correctly, Fraietta?

11        MR. FRAIETTA:  You are, your Honor.

12        THE COURT:  Okay.

13        MR. FRAIETTA:  Two quick points.  First, on the

14   subsequent statute, we submitted a surreply addressing that.

15   That's ECF number 18, and I don't want to belabor the points in

16   there, but I will note that the subsequent statute that

17   Mr. Haskins is referring to, the 263:12, is concerned with the

18   -- it doesn't cover the electronic transmission of personal

19   information.  It specifically says "non-electric form or

20   format," and it also talks about the context where consent's

21   obtained.  Neither of those is at issue here.  We allege that

22   these transmissions are electronic and there is no consent.

23   So, I don't think that statute ought to be read to change the

24   Commissioner's interpretation of the Driver Privacy Act at the

25   time or subsequently.

1          The second thing I did want to note, and I meant to

2     note this in my prior presentation, your Honor's point on the

3     sanctions language is well taken, and I just wanted to clarify

4     what we were trying to get at there was that defendant removed

5     the case to Federal Court, and we think, in doing so, conceded

6     there was Article III standing.  Reading this language now,

7     though, it's inartful, and I wanted to, you know, take it back,

8     so to speak.  I know we wrote it, but that's not what we meant,

9     and I apologize to the Court and to Mr. Haskins, who I've

10    worked with in the past.  And we don't think he did anything

11    sanctionable.  We just wanted to make the point that defendant

12    removed the case to Federal Court in the first place.

13          THE COURT:  Understood.

14          Anything further from you, Attorney Haskins?

15          MR. HASKINS:  Your Honor, I think the only other thing

16    that I would just point out with respect to the certification

17    question, obviously this Court has discretion regarding whether

18    it's appropriate to certify a question, but, as many other

19    courts, and I'm sure the Court's aware, before exercising that

20    discretion the Court must undertake its own prediction of state

21    law, and if it concludes that state law is reasonably clear,

22    then it should not certify the question.

23          In fact, there was one case we found for the First

24    Circuit where the Court of Appeals noted that, even when the

25    "signposts are somewhat blurred, a federal court 'may assume

1  that the state courts would adopt the rule which, in its view,

2  is supported by the thrust of logic and authority.'"  That was

3  the Moores v. Greenberg case.  And here we believe that the

4  plaintiff's interpretation of the Driver Privacy Act is not

5  supported by either logic or authority, and, as a result, we

6  think this Court can and should dismiss the plaintiff's claims

7  at this stage.

8          And I would point out I think that's particularly

9  important here, because, as your Honor has pointed out, the

10 particular sections that the plaintiff claims give rise to a

11 cause of action here are paragraphs 9(a) and 9(b).  Those are

12 criminal statutes.  They make it either a misdemeanor or a

13 felony, depending on which provision they contend was violated,

14 and, of course, the plaintiff only has the civil claim under

15 Section X of the Act if they can prove, first prove a violation

16 of one of those provisions.

17         So, if you find that the plaintiffs have stated a

18 claim here, you would necessarily have to find that Home Depot

19 and these other retailers have been committing misdemeanors and

20 felonies by simply engaging in what is a routine business

21 practice.  And while we don't think the statute is ambiguous,

22 we think it's important to keep in mind that, when it's a

23 criminal statute, it's important to resolve any ambiguity in

24 favor of lenity.  Any ambiguities in a criminal statute

25 shouldn't be used to criminalize behavior, particularly, you

1    know, routine business activities of this type.

2        Both companies like Home Depot and other citizens

3    should be able to read the statute and determine what it

4    prohibits.  They shouldn't be subjected to some sort of

5    "gotcha" criminal liability that the plaintiff seeks to impose

6    by simply, I would say, an aggressive, at best, interpretation

7    of the statute, and that's particularly true here, because the

8    statute requires a knowing violation.  No one at Home Depot

9    knew or should have known that a plaintiff's driver's license

10   was a department record, the collection of which would subject

11   it to this type of liability.

12       THE COURT:  All right.  Anything further, Counsel?

13       MR. HASKINS:  No, your Honor.

14       THE COURT:  All right.

15       MR. FRAIETTA:  Your Honor, was that an invitation for

16   both counsel?

17       THE COURT:  Sure.  Go ahead.

18       MR. FRAIETTA:  The only final, final point I would

19   make is that, going back to the Commissioner's letter, it

20   doesn't make much sense to say that the Commissioner was

21   concerned with Home Depot storing the information but it's

22   perfectly okay for Home Depot to transmit it to somebody else,

23   some undisclosed third party who they don't have consent to

24   send it to, and then that that third party stores the

25   information instead.  We think that's kind of an absurd

1    conclusion, and we'd just note that.

2          THE COURT:  Understood.

3          Thank you, Counsel.  Court is adjourned.

4          MR. FRAIETTA:  Thank you, your Honor.

5          MR. HASKINS:  Thank you, your Honor.

6       (WHEREUPON, the proceedings adjourned at 2:50 p.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1               C E R T I F I C A T E

2

3

4          I, Brenda K. Hancock, RMR, CRR and Official Court

5     Reporter of the United States District Court, do hereby certify

6     that the foregoing transcript constitutes, to the best of my

7     knowledge, skill, ability and belief, a true and accurate

8     transcription of the within proceedings.

9

10

11

12

13     Date: ___11/21/23_____     /s/ *Brenda K. Hancock*
                                     Brenda K. Hancock, RMR, CRR
14                                   Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Pamela Smith

        v.                                  Case No. 23-cv-294-LM

Home Depot U.S.A., Inc.

<u>JUDGMENT</u>

In accordance with the Order by Chief Judge Landya B.

McCafferty dated December 19, 2023, judgment is hereby entered.

By the Court:

/s/ Daniel J. Lynch
Daniel J. Lynch
Clerk of Court

Date: December 20, 2023

cc: Counsel of Record

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Pamela Smith,
individually and on behalf of all
others similarly situated

   v.        Civil No. 23-cv-294-LM
             Opinion No. 2023 DNH 152 P
Home Depot U.S.A., Inc.


## O R D E R

  Pamela Smith brings this putative class action against Home Depot U.S.A., Inc. ("Home Depot") alleging that Home Depot violated the New Hampshire Driver Privacy Act ("Driver Privacy Act"), RSA 260:14, by transmitting information from Smith's driver's license to a third-party without her consent. Presently before the court is Home Depot's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). See doc. no. 11. For the following reasons, the court grants Home Depot's motion.


### STANDARD OF REVIEW

  Under Rule 12(b)(6), the court must accept the factual allegations in the complaint as true, construe reasonable inferences in the plaintiff's favor, and "determine whether the factual allegations in the plaintiff's complaint set forth a plausible claim upon which relief may be granted." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 68, 71 (1st Cir. 2014) (quotation omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Analyzing plausibility is "a context-specific task" in which the court relies on its "judicial experience and common sense." Id. at 679.

## BACKGROUND

While Smith's complaint contains limited factual allegations, the court draws the following facts from her complaint. See doc. no. 5 at 2. Within the last three years, Smith has made multiple returns to a Home Depot store in Concord, New Hampshire. Smith did not present a receipt for her items at the time she made these returns. When customers make non-receipted returns, Home Depot provides them with store credit via stored value cards, which are similar to gift cards. In addition to making multiple non-receipted returns within the last three years, Smith also purchased items using in-store credit.

When making her non-receipted returns or purchasing items using in-store credit, Home Depot required Smith to present her driver's license. Home Depot then transmitted information on Smith's driver's license to an entity known as "The Retail Equation." According to Smith's complaint, The Retail Equation provides software used by retailers to analyze customers' shopping habits in order to determine whether a particular transaction may be fraudulent. Smith alleges that she was not aware that Home Depot would transmit the information on her driver's license to a third-party in order to process her transactions.

Smith brought the instant putative class action in New Hampshire Superior Court on or about April 10, 2023. See id. at 2, 23. Her complaint alleges two claims

against Home Depot, both of which arise under the Driver Privacy Act. Home Depot
removed Smith's action to this court on or about May 25, 2023, pursuant to the
Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (codified in
scattered sections of 28 U.S.C.).

## DISCUSSION

Smith's first claim alleges that Home Depot violated RSA 260:14, IX(a) by
disclosing information on her driver's license to The Retail Equation. That statute
provides in pertinent part:

> A person is guilty of a misdemeanor if such person
> knowingly discloses information from a department record
> to a person known by such person to be an unauthorized
> person . . . . Each such unauthorized disclosure . . . shall be
> considered a separate offense.

Her second claim alleges that Home Depot violated RSA 260:14, IX(b) by
engaging in this same conduct. That statute provides that a "person is guilty of a
class B felony if, in the course of business, such person knowingly sells, rents, offers,
or exposes for sale motor vehicle records to another person in violation of this
section." Although both RSA 260:14, IX(a) and (b) speak in terms of criminal
liability, another provision of the statute states that "any person aggrieved by a
violation of this section may bring a civil action." RSA 260:14, X. A successful
plaintiff may obtain the greater of actual damages or statutory damages of $2,500
"for each violation," as well as attorney fees and costs. Id.

Home Depot now moves to dismiss both counts. With respect to Count I,
Home Depot argues that Smith fails to state a claim because the clause of RSA

260:14, IX(a) upon which Smith relies only prohibits the disclosure of "department record[s]." RSA 260:14, IX(a). Home Depot contends, <u>inter alia</u>, that Smith's driver's license is not a "department record" within the meaning of RSA 260:14, IX(a). With respect to Count II, Home Depot argues that Smith fails to state a claim because RSA 260:14, IX(b) provides that it is unlawful if a person "sells, rents, offers, or exposes for sale motor vehicle records." RSA 260:14, IX(b). Home Depot submits that (1) Smith's driver's license is not a "motor vehicle record," but (2) even if it is, Smith failed to plausibly allege that Home Depot sold, rented, offered, or exposed for sale her driver's license.

Home Depot's motion requires the court to engage in statutory interpretation. Federal courts applying state law "look to the pronouncements of a state's highest court in order to discern the contours of that state's law." Hosp. San Antonio, Inc. v. Oquendo-Lorenzo, 47 F.4th 1, 7 (1st Cir. 2022) (quoting González Figueroa v. J.C. Penney P.R., Inc., 568 F.3d 313, 318 (1st Cir. 2009)). Here, the New Hampshire Supreme Court has not ruled on the precise issues presented. Therefore, the court "must anticipate how the [New Hampshire Supreme Court] would rule if it were deciding the questions presented." Id. This inquiry requires the court to "look to the 'pertinent statutory language and analogous decisions of the [New Hampshire] Supreme Court.'" Id. (quoting González Figueroa, 568 F.3d at 318).

When interpreting statutes, the New Hampshire Supreme Court begins with the statutory language, and construes "that language according to its plain and ordinary meaning." Brady v. Sumski, --- N.H. ---, 2023 WL 5281156, at *2 (2023). The Court will "interpret the statute as written and will not consider what the

legislature might have said or add language that the legislature did not see fit to include." Id. As the Court examines the statute, it will not "merely look at isolated words or phrases," but will instead "consider the statute as a whole." DeVere v. Att'y Gen., 146 N.H. 762, 765 (2001). This enables the Court to "better . . . discern the legislature's intent, and therefore better . . . understand the statutory language 'in light of the policy sought to be advanced by the entire statutory scheme.'" Id. (quoting Appeal of Mascoma Valley Reg. Sch. Dist., 141 N.H. 98, 100 (1996)).

Here, the court will begin its analysis by conducting an overview of the Driver Privacy Act as a whole, which will enable it to better understand the meaning of subparagraphs IX(a) and (b). Then, the court will consider whether Smith states a claim for violation of subparagraph IX(a), before analyzing whether she states a claim under subparagraph IX(b).

I.      Overview of RSA 260:14

The New Hampshire legislature enacted the Driver Privacy Act in 1996 in order to comply with the federal Driver's Privacy Protection Act ("DPPA"). See DeVere, 146 N.H. at 765. "In enacting the federal legislation, Congress was concerned that many States were selling information contained in motor vehicle records to individuals and businesses producing 'significant revenue for the States.'" Id. at 764 (quoting Reno v. Condon, 528 U.S. 141, 143-44 (2000)). DPPA, enacted in 1994, "regulates the authority of state motor vehicle departments to disclose information contained in their records." Id. Subject to certain exceptions, DPPA generally prohibits state motor vehicle departments from disseminating

information regarding a particular individual without that individual's consent. See

Reno, 528 U.S. at 145. It subjects "both private parties and state agencies that

violate the statute to substantial fines." DeVere, 146 N.H. at 765 (citing 18 U.S.C.

§ 2723(b)).

The Driver Privacy Act "purports to conform with the DPPA by setting forth

a general rule that motor vehicle 'records shall not be public records or open to the

inspection of any person.'" Id. (quoting RSA 260:14, II(a)). Although the Act provides

that "motor vehicle records shall be kept by the department [of safety][1] at its office,"

and are generally nonpublic records, RSA 260:14, II(a), it does permit the

department to disclose motor vehicle records in certain instances. For example,

paragraph II-a permits the release of motor vehicle records created to document an

accident or collision involving government-owned vehicles pursuant to New

Hampshire's "Right to Know" Law, RSA chapter 91-A. See RSA 260:14, II-a.

Paragraph III-a deals with the circumstances under which motor vehicle records

may be released for the limited purpose of toll collection to the New Hampshire

department of transportation (or its contractors). See RSA 260:14, III-a; see also

RSA 260:14, III-c (regarding the release of motor vehicle records to other states for

the purpose of toll collection).

By way of further example, paragraph IV(a) permits the department to

disclose motor vehicle records to motor vehicle manufacturers for certain "strictly

---

[1] The Driver Privacy Act's implementing regulations define "department" as "the New Hampshire department of safety." N.H. Code Admin. R. Saf-C 5601.04; see RSA 260:14, XII (authorizing the commissioner of safety to adopt implementing regulations).

limited" uses enumerated in that section, such as "in connection with matters of motor vehicle or driver safety and theft." RSA 260:14, IV(a)(1); <u>see also</u> RSA 260:14, IV(a)(2). The department may disclose the records only where the person requesting them represents "on a form satisfactory to the department" that the records will be strictly limited to an approved use. RSA 260:14, IV(a)

Paragraph V(a) of the statute provides that "motor vehicle records may be made available" in ten specific scenarios (such as providing notice to the owners of towed vehicles), but, as with paragraph IV(a), only if "the person requesting the records" makes a "representation . . . on a form satisfactory to the department." RSA 260:14, V(a). For a disclosure under paragraph V(a), the representation must satisfy the department "that the use of the record will be strictly limited to" one of the authorized uses set forth in paragraph V(a). <u>Id.</u> Except in limited circumstances, a person who receives personal information contained in motor vehicle records "under the provisions of subparagraph V(a) may not sell, rent, transfer, or make the information available to another person for the same or any other use." RSA 260:14, VI(a).

The statute also provides that individuals can access their own motor vehicle records "upon proof of identity." RSA 260:14, VII. If someone other than the subject of the records seeks them, the department may disclose them only "upon proof, in such form and manner as the department prescribes, that the notarized, written consent of the person who is the subject of the record has been obtained." <u>Id.</u>

The Driver Privacy Act permits persons to opt-out of disclosure and to bar the department from disclosing motor vehicle records regarding that person in many circumstances where disclosure would be otherwise authorized by paragraph V(a). See RSA 260:14, V(b)(1). "A person who so elects shall inform the department in writing, and the department shall not thereafter make the personal information available, nor shall the department make available a list of the persons who have so elected." Id. In addition, "[t]he commissioner may limit the information contained in motor vehicle records released to any person under this section if it is determined by the commissioner that the release of certain personal information is unnecessary," RSA 260:14, XVI, but "[n]othing in this section shall prohibit the department in its discretion from releasing to the public any person's name, age or motor vehicle offenses only," RSA 260:14, VIII.

Against this backdrop, the court considers whether Home Depot's disclosure of information on Smith's driver's license to The Retail Equation violates the Driver Privacy Act.

## II.   Smith Fails to State a Claim Under RSA 260:14, IX(a)

As noted, Smith's first claim is brought pursuant to RSA 260:14, IX(a). That paragraph, in conjunction with paragraph X, provides a private right of action when a "person knowingly discloses information from a department record to a person known by such person to be an unauthorized person." Home Depot argues that Smith's driver's license is not a "department record" as that term is used in RSA 260:14, IX(a). The court agrees.

8

While "department record" is not defined in the Driver Privacy Act, the term "department" is defined in its implementing regulations as "the New Hampshire department of safety." N.H. Code Admin. R. Saf-C 5601.4. And, although "record" is not separately defined in the statute or its regulations, the plain meaning of "record" in this context is "an authentic official copy of a document entered in a book or deposited in the keeping of some officer designated by law." Webster's Third New Int'l Dictionary 1898 (Philip Babcock Gove et al. eds., 1993). Taken together, "department record" as that phrase is used in RSA 260:14, IX(a) means authentic copies of documents deposited and kept with of the New Hampshire department of safety.[2]

By providing information within Smith's drivers' license to The Retail Equation, Home Depot did not violate RSA 260:14, IX(a). The information Home Depot disclosed was not within a document obtained from the department of safety.

---

[2] While the Driver Privacy Act did not incorporate the definition of "record" applicable to DPPA, the court notes that its construction is in harmony with the federal definition. See Andrews v. Sirius XM Radio Inc., 932 F.3d 1253, 1260 (9th Cir. 2019) ("Congress intended the DPPA to reflect the Privacy Act of 1974, which defines a 'record' as 'information about an individual that is maintained by an agency.'" (citation and emphasis omitted) (quoting 5 U.S.C. § 552a(a)(4))). Although Smith objects to this court considering federal courts' interpretations of DPPA in construing the Driver Privacy Act, the New Hampshire Supreme Court has often stated that, in construing New Hampshire statutes, it is appropriate to "look to the decisions of other jurisdictions interpreting similar acts for guidance, including federal interpretations of" federal laws. E.g., Clay v. City of Dover, 169 N.H. 681, 686 (2017). "Such similar laws, because they are in pari materia, are interpretively helpful . . . ." Id. (quoting N.H. Right to Life v. Dir., N.H. Charitable Tr. Unit, 169 N.H. 95, 103 (2016)). It is all the more appropriate to consider federal interpretations of DPPA in this case given that New Hampshire passed the Driver Privacy Act in order to comply with DPPA. See DeVere, 146 N.H. at 765.

Rather, Smith freely provided her driver's license to Home Depot in order to complete non-receipted returns and to make purchases using in-store credit, and Home Depot transmitted information within Smith's freely-provided license to The Retail Equation. "A driver's license, though issued by the DMV, becomes the possession of an individual, not the DMV that issued it." Andrews v. Sirius XM Radio Inc., 932 F.3d 1253, 1260 (9th Cir. 2019) (emphasis omitted) (construing DPPA). Because Smith's personal driver's license, which she kept in her own possession, is not a "department record," she fails to state a claim for a violation of RSA 260:14, IX(a).

Smith's arguments to the contrary are not persuasive. She contends that "department record" should be read to "include any 'information' collected by the New Hampshire Department of Safety." Doc. no. 15 at 9 (emphasis omitted). Under Smith's expansive reading, however, RSA 260:14, IX(a) would prohibit the disclosure of information that happens to be contained within a document kept by the department, even when that information is obtained from a document that is not—and never was—in the department's possession. Given that RSA 260:14 viewed as a whole is primarily concerned with circumstances in which it is permissible to disclose information in the department's possession or obtained from the department, Smith's broad reading is not in keeping with the overall purpose of the statutory scheme. The court therefore rejects Smith's interpretation. State v. Stowe, 162 N.H. 464, 474 (2011) (stating that the New Hampshire Supreme Court

will "apply statutes in light of the legislature's intent in enacting them and the policy sought to be advanced by the entire statutory scheme").[3]

For these reasons, the court concludes that Smith fails to state a claim under RSA 260:14, IX(a).[4] Count I of her complaint is therefore dismissed.

III.   <u>Smith Fails to State a Claim Under RSA 260:14, IX(b)</u>

Smith's second claim is brought under RSA 260:14, IX(b). A private right of action exists under that paragraph, in conjunction with paragraph X, when a person, "in the course of business, . . . knowingly sells, rents, offers, or exposes for sale motor vehicle records to another person in violation of this section." Home Depot contends that Smith's license is not a "motor vehicle record." In the alternative, Home Depot argues that Smith fails to plausibly allege that Home Depot sold, rented, offered, or exposed her license for sale.

In her objection, Smith observes that the Driver Privacy Act defines "motor vehicle records" in part to include "licenses issued or revoked by the department relative to motor vehicles and the information, including personal information,

---

[3] Smith alternatively argues that the term "department record" includes everything that is a "motor vehicle record" under the statute, and that, since a driver's license is a "motor vehicle record" regardless of whose possession it is in, it is also a "department record" regardless of whose possession it is in. Because the court concludes below that a driver's license in the possession of the person to whom it pertains is not a "motor vehicle record" under the Driver Privacy Act, <u>see</u> Part III, <u>infra</u>, the court rejects Smith's alternative argument.

[4] Given the court's conclusion that Smith failed to plausibly allege Home Depot disclosed information from a "department record" in violation of RSA 260:14, IX(a), it need not consider Home Depot's alternative arguments that The Retail Equation is not an "unauthorized person" under paragraph IX(a) or that Home Depot did not act knowingly.

contained in them." RSA 260:14, I(a). Despite Smith's observation, however, the court is dubious of the proposition that a driver's license in the possession of the person to whom it pertains is a "motor vehicle record" within the meaning of the Driver Privacy Act. Other provisions of the Act provide that "[p]roper motor vehicle records shall be kept by the department at its office." RSA 260:14, II(a); see also N.H. Code Admin. R. Saf-C 5602.01(a) ("Motor vehicle records are maintained at the Department of Safety, Division of Motor Vehicles, 23 Hazen Drive, Concord, NH."); 5602.02 ("Any authorized person requesting motor vehicle record information shall submit the appropriate form and payment prior to the department's release of information."). Further provisions require a representation "satisfactory to the department" that requested motor vehicle records will be used only for a statutorily-authorized purpose before such records may be disclosed. E.g., RSA 260:14, V(a). While the Driver Privacy Act generally prohibits the redisclosure of information within a record originally obtained from the department, see, e.g., RSA 260:14, VI(a), construing the statute as a whole, the more plausible reading is that the statutory phrase "motor vehicle records" includes only those "licenses" "kept by the department at its office." RSA 260:14, I(a), II(a).[5] The court does not agree with Smith that her own driver's license, kept in her possession, is a "motor vehicle record" as that phrase is used in RSA 260:14.

---

[5] This reading is all the more plausible when one considers that RSA 263:12, X already prohibits scanning, recording, retaining, or storing "personal information, as defined in RSA 260:14, obtained from any license," irrespective of whether the license was obtained from the department or an individual.

While this in and of itself is fatal to Smith's claim under paragraph IX(b), her claim fails for the additional reason that she does not plausibly allege that Home Depot sold, rented, offered, or exposed for sale her driver's license. As alluded to supra, the factual allegations in Smith's complaint are minimal. She alleges that she made non-receipted returns and purchased items using store credit at a Home Depot store in Concord, New Hampshire, over the last three years. While she also alleges that Home Depot "knowingly sold, rented, offered, or exposed for sale" the information contained within her license to The Retail Equation when she made these transactions, this mere parroting of RSA 260:14, IX(b) is not to be credited in a 12(b)(6) analysis. See Iqbal, 556 U.S. at 678 ("A pleading that offers . . . 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

Even when reasonably construing the complaint's allegations in Smith's favor, the most that can be gleaned from her complaint is an allegation that Home Depot provided Smith's driver's license, or information from her driver's license, to The Retail Equation so that The Retail Equation could cross-reference her identification information against her prior shopping habits to determine the likelihood that a given transaction was fraudulent. It cannot be seriously contended from Smith's factual allegations that Home Depot's alleged disclosures amounted to a sale, a rental, or an exposure for sale of Smith's personal information. To Smith's credit, she does not advance such contentions in her objection to Home Depot's motion.

Smith does argue, however, that she plausibly alleged Home Depot "offered" her driver's license information to The Retail Equation. According to Smith, the Driver Privacy Act "prohibits a person from offering a motor vehicle record to another even if not in exchange for monetary gain." Doc. no. 15 at 14 (emphasis and quotation omitted). In support of her contention, she cites a definition of "offer" contained within Black's Law Dictionary, which provides that an offer is "[t]he act or an instance of presenting something for acceptance; specif., a statement that one is willing to do something for another person or to give that person something." Offer, Black's Law Dictionary (11th ed. 2019). Smith argues that Home Depot "offered" the personal information contained within her driver's license to The Retail Equation by retaining The Retail Equation's services and "then followed through on that offer by sending the information to" The Retail Equation. Doc. no. 15 at 14.

Smith misconstrues the statute. The flaw in Smith's argument is that it ignores the familiar principle of statutory interpretation under which a broader statutory term "takes on the more specialized character of its neighbors." Home Gas Corp. v. Strafford Fuels, Inc., 130 N.H. 74, 82 (1987) (explaining that this principle of statutory construction is also known as "noscitur a sociis"); accord 2A Shambie Singer, Sutherland Statutes and Statutory Construction § 47:16 (7th ed.) ("[O]rdinarily, the coupling of words denotes an intention that they should be understood in the same general sense."). While the term "offer" may have the meaning ascribed to it by Smith in other statutes, in RSA 260:14, IX(b) it appears in sequence with the statutory terms "sells, rents, . . . or exposes for sale." These terms

are indicative of a monetary transaction, not simply an exchange irrespective of financial gain. Construing the term "offers" by reference to the "more specialized character" of the words adjacent to it, the court concludes that RSA 260:14, IX(b) does not prohibit the mere disclosure or offer to disclose motor vehicle records. Home Gas Corp., 130 N.H. at 82.

Because Smith's complaint alleges no more than mere disclosure of the information within her driver's license, she fails to state a claim under RSA 260:14, IX(b). Therefore, the court dismisses Count II of her complaint.

## CONCLUSION

Home Depot's motion to dismiss (doc. no. 11) is granted. The clerk of court is directed to enter judgment and close the case.

SO ORDERED.

Landya McCafferty
United States District Judge

December 19, 2023

cc:    Counsel of Record

State of New Hampshire
  Division of Administrative Rules
    Commissioner, Department of Safety [Saf-C] (Refs & Annos)
      Chapter Saf-C 5600. Confidentiality of Motor Vehicle Records (Refs & Annos)
        Part Saf-C 5606. Scanning, Recording, Retaining or Storing Personal Information

N.H. Code Admin. R. Saf-C 5606.06

Saf-C 5606.06. Department Authorization to Financial Institutions, Insurance Companies and
Legitimate Businesses to Record, Store or Retain Personal Information in Electronic Form or Format.

Currentness

(a) Notwithstanding any rule to the contrary, the department authorizes the recording, storing or retaining of personal information from any license in any electronic form or format by a financial institution, insurance company, or legitimate business as defined in RSA 260:14, I(d), if the financial institution, insurance company or legitimate business:

(1) Is obtaining the information for use in the conduct of the business to verify the identity of the consumer or to prevent fraud;

(2) Does not sell, rent, transfer or make the information available to another in violation of federal law and the provisions of RSA 260:14;

(3) Does not use the personal information, in whole or in part, obtained from a license to create, combine or link with any other data on any database by the financial institution, insurance company, or legitimate business which is sold, rent, transferred or made available to another person in violation of federal law and the provisions of RSA 260:14; and

(4) Is acting in compliance with applicable federal laws, including Health Insurance Portability and Accountability Act (P.L. 104-191), USA Patriot Act (P.L. 107-56), Gramm-Leach-Bliley Act (P.L. 106-102) and Fair Credit Reporting Act (15 U.S.C. x1681 et seq.).

(b) Notwithstanding any rule to the contrary, the department authorizes any business entity in good standing and authorized to do business in New Hampshire, to record, store, retain or transmit to another business entity, personal information from a driver license so long as the business entities comply with all of the provision of Saf-C 5606.06(a) (1) - (4), receive the consent of the license holder, and the personal information is being obtained under one of the following conditions only:

(1) To effect, administer, or enforce a transaction requested or authorized by the person to whom the information pertains;

(2) In connection with servicing or processing payment for a product or service requested or authorized by the person to whom the information pertains; and

(3) For employment screening, so long as the personal information is not transferred, combined or linked with any other data on any database not controlled exclusively by the employer.

**Credits**

<u>Source.</u> #7813, EXEMPT, eff 1-1-03

Current with amendments received through December 1, 2023. Some sections may be more current; see credits for details. NOTE: The official version also includes as-filed adopted rules subject to revision prior to certification. To check for as-filed adopted rules that are not yet certified, identify the last document number in the Source note, then use the Filing History Refs & Annos document for each set of agency rules to identify any subsequent as-filed adopted rules, indicated by a lack of an asterisk following the document number. Text of as-filed adopted rules is available on the Proposed & Adopted Regulations - Current Westlaw product page beginning with the May 12, 2022 register.

N.H. Code Admin. R. Saf-C 5606.06, NH ADC Saf-C 5606.06

**End of Document**                                © 2024 Thomson Reuters. No claim to original U.S. Government Works.

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Jodi Bourgeois

    v.

The TJX Companies, Inc.

Case No. 1:23-cv-00354-PB

<u>JUDGMENT</u>

    In accordance with the Endorsed Order by Judge Paul Barbadoro dated January 5, 2024, judgment is hereby entered.

    The prevailing party may recover costs consistent with Fed. R. Civ. P. 54(d) and 28 U.S.C. § 1920.

By the Court:

Daniel J. Lynch
Clerk of Court

Date: January 5, 2024

cc: Counsel of Record

MIME-Version:1.0
From:ecf_bounce@nhd.uscourts.gov
To:nef@nhd.uscourts.gov
Message-Id:2745036@nhd.uscourts.gov
Subject:Activity in Case 1:23-cv-00354-PB Bourgeois v. The TJX Companies, Inc. Order on Motion to Dismiss
Content−Type: text/html

## U.S. District Court

## District of New Hampshire

## Notice of Electronic Filing

The following transaction was entered on 1/5/2024 at 2:46 PM EST and filed on 1/5/2024

| | |
|---|---|
| **Case Name:** | Bourgeois v. The TJX Companies, Inc. |
| **Case Number:** | 1:23−cv−00354−PB |
| **Filer:** | |
| **Document Number:** | No document attached |

**Docket Text:**
 ///ENDORSED ORDER granting [8] Motion to Dismiss. *Text of Order: I grant defendant's motion to dismiss (document number 8) substantially for the reasons set forth in Judge McCafferty's order dismissing the materially identical complaint in* Smith v. Home Depot U.S.A., Inc., *Civil No. 23−cv−294−LM, 2023 DNH 152 (2023).* So Ordered by Judge Paul J. Barbadoro.(jwb)

**1:23−cv−00354−PB Notice has been electronically mailed to:**

Benjamin O. Aigboboh &nbsp &nbsp baigboboh@sheppardmullin.com, 96774244202@filings.docketbird.com, bking@sheppardmullin.com

Benjamin T. King &nbsp &nbsp benjamin@nhlawoffice.com, stacey@nhlawoffice.com, susan@nhlawoffice.com

Matthew A. Girardi &nbsp &nbsp mgirardi@bursor.com

Nathan Reed Fennessy &nbsp &nbsp nfennessy@preti.com, sbarrington@preti.com

Philip Lawrence Fraietta &nbsp &nbsp pfraietta@bursor.com, ecf−notices@bursor.com, pfraietta@ecf.courtdrive.com

**1:23−cv−00354−PB Notice, to the extent appropriate, must be delivered conventionally to:**